Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/16/2021 08:11 AM CDT

In re Interest of Victor L., a child
under 18 years of age.
State of Nebraska, appellant, v.
Victor L., appellee.

___ N.W.2d ___

Filed April 23, 2021.    No. S-20-312.

1. **Juvenile Courts: Appeal and Error.** Ordinarily, an appellate court reviews juvenile cases de novo on the record and reaches a conclusion independent of the juvenile court's findings.

2. **Juvenile Courts: Mental Competency: Appeal and Error.** A juvenile court's determination that a juvenile petition should be dismissed because the juvenile lacks competency to participate in the proceedings involves the sort of discretion that warrants review de novo on the record for an abuse of discretion.

3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

5. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

6. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken.

7. **Juvenile Courts: Minors: Final Orders: Jurisdiction.** The State's right in juvenile proceedings is derived from its parens patriae interest.

The State's substantial right is affected when an order dismisses a juvenile proceeding in its entirety, with no leave to amend, and the State is thus foreclosed from pursuing adjudication and disposition on the grounds alleged.

8. **Statutes: Legislature: Public Policy.** It is the Legislature's function through the enactment of statutes to declare what is the law and public policy.

9. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

10. **Statutes.** A court must give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

11. **Juvenile Courts: Minors.** The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, and the Nebraska Juvenile Code must be liberally construed to serve the best interests of juveniles who fall within it.

12. **Juvenile Courts: Minors: Mental Competency: Public Policy.** The plain language of Neb. Rev. Stat. § 43-258 (Reissue 2016) recognizes, as a matter of public policy, that juveniles accused of delinquency and status offenses have a statutory right to be competent to participate in adjudication proceedings.

13. **Juvenile Courts: Minors: Mental Competency: Legislature: Intent.** Because the Legislature has established a juvenile's statutory right to be competent to participate in adjudication proceedings, but it has not mandated a specific procedure for enforcing or protecting that right, it intended to leave the procedure to the sound discretion of the juvenile court, based on the best interests of the juvenile.

14. **Juvenile Courts: Minors: Mental Competency.** An appropriate judicial procedure for determining whether preadjudication dismissal is in the best interests of an incompetent juvenile will generally include consideration of (1) the nature and extent of the juvenile's incompetency and the impact it may have on the juvenile's meaningful exercise of other adjudicatory rights, (2) the evaluation report required by Neb. Rev. Stat. § 43-258(3) (Reissue 2016) and any other competent evidence assessing the juvenile's needs and making recommendations for the juvenile's continuous and long-term care, (3) the juvenile's statutory right to be competent while participating in adjudication proceedings, and (4) the future treatment and rehabilitation of the juvenile in the event of an adjudication. The benchmark of the determination is the protection of the best interests of the incompetent juvenile.

Appeal from the Separate Juvenile Court of Douglas County: Chad M. Brown, Judge. Affirmed.

Natalie Killion, Deputy Douglas County Attorney, and Rachel Lowe, Senior Certified Law Student, for appellant.

Thomas C. Riley, Douglas County Public Defender, and Leigh A. Ellis for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

The State filed a petition in the separate juvenile court of Douglas County, Nebraska, alleging Victor L. had been habitually truant from school and fell within the meaning of Neb. Rev. Stat. § 43-247(3)(b) (Reissue 2016). Victor moved to dismiss the petition, alleging he was not competent to be adjudicated. Following a court-ordered competency evaluation, the juvenile court found Victor was not competent and dismissed the petition. The State timely appealed, and we moved this case to our docket on our own motion.[1] On this record, we affirm.

## BACKGROUND

Victor was born in December 2004 and resides with his mother in Douglas County, Nebraska. During the 2018-19 school year, Victor was enrolled at a local middle school.

### Truancy Petition

In April 2019, the State filed a petition against Victor in the separate juvenile court of Douglas County, alleging he had not attended school for more than 20 days during the current school year and therefore was habitually truant within the meaning of § 43-247(3)(b). The court appointed counsel to represent Victor in the proceeding.

[1] See Neb. Rev. Stat. § 24-1106 (Reissue 2014 & Cum. Supp. 2018).

Motion to Dismiss and
Competency Evaluation

Prior to the adjudication hearing, Victor moved to dismiss the truancy petition, alleging he was "incompetent to stand trial." Victor's motion referred to a 2018 competency evaluation which had concluded he was not competent "'due to cognitive deficits, limited legal understanding, and emotional [lability].'" The 2018 competency evaluation is not in our record, but other information in the record suggests it was a court-ordered evaluation in an unrelated delinquency proceeding. In the instant proceeding, Victor's motion to dismiss alleged generally that adjudicative competency was one of the "essential requirements of due process and fair treatment" to which a juvenile is entitled and that "adjudication of an incompetent juvenile violates due process of law."

The motion to dismiss was taken up at a hearing on September 10, 2019. That hearing was not included in our bill of exceptions, but the court's written order indicates Victor appeared for the hearing with his counsel and Victor's mother was present pro se. A single unidentified exhibit was offered, which is not in our record. Based on the evidence adduced, the court continued the scheduled adjudication hearing and ordered Victor to undergo a new competency evaluation. Probation was appointed on a preadjudicative basis to assist with that evaluation.[2]

At a competency review hearing on December 17, 2019, the court received into evidence a "Juvenile Adjudicative Competency Evaluation" report authored by Kari Perez, Ph.D. In the report, Perez described Victor's complicated mental health history, which included prior hospitalizations for suicidal ideation, medication noncompliance, and a long history of "'school avoidance.'" Testing revealed Victor's full-scale

---

[2] See Neb. Rev. Stat. § 43-258(2)(b) (Reissue 2016) (authorizing court to order competency evaluation to be arranged by Office of Probation Administration).

IQ was 68, placing him in the second percentile of children his age. Testing also revealed Victor had extremely low verbal reasoning abilities, markedly impaired abstract reasoning abilities, and substantial impairments in practical knowledge and judgment. The report suggested all of these skills were "directly related to [Victor's] ability to assist his attorney and to make decisions." Results from testing to assess Victor's understanding of the juvenile legal process showed he understood some aspects of the proceedings, but did not understand others. Among other things, he did not understand the basis for his current charges, how he could assist his counsel, what it meant to deny the allegations of the petition, the role of the juvenile court judge, the role of his defense attorney, or the role of the juvenile probation officer. Ultimately, the report concluded that "Victor does not have the capacities associated with competence to stand trial in juvenile court."

In a section of the report titled "Remediation Potential," Perez noted:

It may be possible for Victor's adjudicative competency to improve in the areas of understanding and appreciation of pleas, penalties, and the roles of the courtroom participants; however, this will require repeated, graded exposure to these concepts over time, substantially more than is required for most individuals his age. Even if he is able to improve in these areas, his ability to reason with that information in the service of assisting his attorney and making case decisions remains limited.

Perez suggested that Victor's competency deficits were due primarily to his developmental delays in reasoning and communication and his mental health condition. She opined these conditions were "likely to endure and to continue to negatively impact his competency."

No party disputed the findings or methodology of Perez, and no additional evidence bearing on Victor's competency was offered. Based on the evidence adduced, Victor's counsel

urged the court to find that Victor was not competent and to dismiss the truancy petition on that basis.

The State did not dispute the report's conclusion that Victor was not competent; instead, it argued that a juvenile's "lack of competency, per se, is [not] grounds for dismissal." The State's primary contention was that competency was not required for adjudication of a status offense. Alternatively, the State proposed the court should consider either proceeding with the adjudication hearing after appointing a guardian ad litem (GAL) for Victor or ordering Victor to "go to some facility in order to regain competence." The State offered no evidence showing how the appointment of a GAL would allow Victor to meaningfully participate in the proceedings despite his incompetency. And when the court asked the State's counsel whether Nebraska had a facility focused on competency restoration for juveniles, the State responded that it would need to do some research. The court took the matter under advisement, and our record contains no information from the State regarding competency restoration.

ORDER OF DISMISSAL

In an order entered March 25, 2020, the court found that Victor was not competent, and it dismissed the truancy proceeding on that basis. The order of dismissal directed that all records relating to the matter be sealed[3] and recited that information concerning the proceedings was deemed never to have occurred. The State appeals.

ASSIGNMENTS OF ERROR

The State assigns, restated and renumbered, that the juvenile court erred in dismissing the truancy petition because (1) competency is not required in juvenile adjudications for a status offense; (2) even if competency is required for status offense adjudications, the court could have adequately protected the

---

[3] See Neb. Rev. Stat. §§ 43-2,108.01 to 43-2,108.05 (Supp. 2019).

juvenile's competency right through other procedures; and (3) the juvenile court should not have dismissed based on a finding of incompetency before ordering appropriate treatment to restore competency or making a judicial finding that competency could not be restored.

## STANDARD OF REVIEW

[1] We have not previously articulated a standard of review for appeals from a juvenile court's preadjudication determination that a petition should be dismissed because the juvenile is not competent. Ordinarily, an appellate court reviews juvenile cases de novo on the record and reaches a conclusion independent of the juvenile court's findings.[4] But in some cases, we have said the appropriate standard of review is de novo on the record for an abuse of discretion.[5] We have applied the latter standard of review when considering a juvenile court's decision to transfer a juvenile delinquency case to county court or district court,[6] when considering a juvenile court's determination that a juvenile was denied the statutory right to a prompt adjudication,[7] and when considering a juvenile court's determination that a juvenile's waiver of counsel was voluntary, knowing, and intelligent.[8]

[2,3] We now conclude that a juvenile court's determination that a juvenile petition should be dismissed because the juvenile lacks competency to participate in the proceedings involves the sort of discretion that warrants review de novo on the record for an abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons

---

[4] *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017).

[5] See, e.g., *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018); *In re Interest of Shaquille H.*, 285 Neb. 512, 827 N.W.2d 501 (2013); *In re Interest of Dalton S.*, 273 Neb. 504, 730 N.W.2d 816 (2007); *In re Interest of J.K.*, 265 Neb. 253, 656 N.W.2d 253 (2003).

[6] *In re Interest of Steven S., supra* note 5.

[7] *In re Interest of Shaquille H., supra* note 5.

[8] *In re Interest of Dalton S., supra* note 5.

that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[9]

[4] Statutory interpretation presents a question of law, on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[10]

## ANALYSIS

### Dismissal Order Is Final and Appealable

[5] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[11] Victor argues we lack jurisdiction because the State has not appealed from a final order. We disagree.

Pursuant to Neb. Rev. Stat. § 43-2,106.01 (Reissue 2016), the county attorney is among those expressly authorized to appeal from "[a]ny final order or judgment entered by a juvenile court . . . in the same manner as an appeal from [the] district court to the Court of Appeals." The county attorney's appeal process differs in delinquency cases once the juvenile "has been placed legally in jeopardy,"[12] but that appeal process has no application here. As such, the county attorney's right to appeal turns on whether the juvenile court's dismissal was a final order.

Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) authorizes appeals from four types of final orders: (1) those affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) those affecting a substantial right made during a special proceeding; (3) those affecting a substantial right made on summary application in an action after judgment is rendered; and (4) those denying a motion

---

[9] *Walker v. BNSF Railway Co.*, 306 Neb. 559, 946 N.W.2d 656 (2020).

[10] *TransCanada Keystone Pipeline v. Nicholas Family*, 299 Neb. 276, 908 N.W.2d 60 (2018).

[11] *In re Interest of Becka P. et al.*, 296 Neb. 365, 894 N.W.2d 247 (2017).

[12] See § 43-2,106.01(2)(d).

for summary judgment when such motion is based on the assertion of sovereign immunity or the immunity of a government official.[13] We have consistently held that juvenile proceedings are special proceedings.[14] So here, the jurisdictional question turns on whether the order of dismissal affected a substantial right of the State. We conclude it did.

[6,7] Under Nebraska law, a substantial right is affected if "an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken."[15] The State's right in juvenile proceedings is derived from its parens patriae interest,[16] and in *In re Interest of Noah B. et al.*,[17] we held that the State's substantial right is affected when an order dismisses a juvenile proceeding in its entirety, with no leave to amend, and the State is thus foreclosed from pursuing adjudication and disposition on the grounds alleged.

Victor suggests that dismissing the truancy petition did not affect a substantial right of the State, because the State is not precluded from seeking adjudication on different grounds, such as alleging that Victor is within the meaning of § 43-247(3)(a) due to the faults or habits of his parent(s). We express no opinion about whether the State may be able to seek adjudication on alternative grounds, because the jurisdictional question here is not answered by asking whether a different statutory provision might also support adjudication. Instead, the jurisdictional question turns on whether the juvenile court's order dismissed the truancy proceeding in its entirety, thereby foreclosing the State from pursuing adjudication and disposition

---

[13] *In re Claim of Roberts for Attorney Fees*, 307 Neb. 346, 949 N.W.2d 299 (2020).

[14] See, e.g., *In re Interest of Noah B. et al., supra* note 4.

[15] *In re Interest of Karlie D.*, 283 Neb. 581, 587, 811 N.W.2d 214, 221 (2012).

[16] *In re Interest of Noah B. et al., supra* note 4.

[17] See *id.*

of Victor on the ground of truancy under § 43-247(3)(b). It plainly did, and we therefore conclude the State has appealed from a final order. We turn next to the merits of the State's assigned errors.

Competency in Juvenile Adjudications

On appeal, the State's primary argument is that truancy is a status offense and that a juvenile need not be competent to be adjudicated for a status offense. In response, Victor argues that regardless of the basis on which an adjudication is sought, it offends constitutional due process principles to adjudicate a juvenile who is not competent to participate in the proceedings.

This court has not yet addressed whether competency to participate in juvenile adjudication proceedings is among the constitutional due process rights to which juveniles are entitled. The U.S. Supreme Court has not yet addressed the specific question either. But most appellate courts to have considered the question have generally concluded that accused juveniles have a constitutional due process right not to be adjudicated of a juvenile offense while incompetent.[18]

---

[18] See, e.g., *In re Albert C.*, 3 Cal. 5th 483, 397 P.3d 240, 219 Cal. Rptr. 3d 897 (2017); *SWM v. State*, 299 P.3d 673 (Wyo. 2013*)*; *In re T.S.*, 798 N.W.2d 649 (N.D. 2011); *In re K.G.*, 808 N.E.2d 631 (Ind. 2004); *In re J.M.*, 172 Vt. 61, 769 A.2d 656 (2001); *Golden v. State*, 341 Ark. 656, 21 S.W.3d 801 (2000); *Matter of W.A.F.*, 573 A.2d 1264 (D.C. 1990); *State ex rel. Dandoy v. Superior Court*, 127 Ariz. 184, 619 P.2d 12 (1980); *Matter of Welfare of S. W. T.*, 277 N.W.2d 507 (Minn. 1979); *Matter of Two Minor Children*, 95 Nev. 225, 592 P.2d 166 (1979); *State in Interest of Causey*, 363 So. 2d 472 (La. 1978); *In re Carey*, 241 Mich. App. 222, 615 N.W.2d 742 (2000); *In re Williams*, 116 Ohio App. 3d 237, 687 N.E.2d 507 (1997); *State v. E.C.*, 83 Wash. App. 523, 922 P.2d 152 (1996); *In re Interest of S.H.*, 220 Ga. App. 569, 469 S.E.2d 810 (1996); *James v. Superior Court*, 77 Cal. App. 3d 169, 143 Cal. Rptr. 398 (1978). See, also, Restatement of the Law, Children and the Law § 15.30 (Tentative Draft No. 2, 2019) (recognizing U.S. Supreme Court has not considered whether accused juvenile's adjudicative competence is constitutionally required, but state courts and legislatures have almost uniformly concluded due process requires that accused youth facing adjudication must be capable of understanding proceedings and assisting counsel).

We see no reason, in this case, to decide whether juveniles have a constitutional due process right not to be adjudicated while incompetent, because the Nebraska Legislature has already recognized an accused juvenile's statutory right to be competent to participate in adjudication proceedings.[19] In that regard, § 43-258 provides:

(1) Pending the adjudication of any case under the Nebraska Juvenile Code, the court may order the juvenile examined by a physician, surgeon, psychiatrist, duly authorized community mental health service program, or psychologist to aid the court in determining (a) a material allegation in the petition relating to the juvenile's physical or mental condition, (b) *the juvenile's competence to participate in the proceedings*, (c) the juvenile's responsibility for his or her acts, or (d) whether or not to provide emergency medical treatment.

(2)(a) . . . .

(b) . . . [P]ending the adjudication of any case in which a juvenile is alleged to be a juvenile as described in subdivision (1), (2), (3)(b), or (4) of section 43-247 and after a showing of probable cause that the juvenile is within the court's jurisdiction, for the purposes of subsection (1) of this section, the court may order an evaluation to be arranged by the Office of Probation Administration. Any temporary placement of a juvenile made under this section shall be in the least restrictive environment consistent with the best interests of the juvenile and the safety of the community.

(3) Upon completion of the evaluation, the juvenile shall be returned to the court together with a written or electronic report of the results of the evaluation. Such report shall include an assessment of the basic needs

---

[19] See *In re Interest of Brandy M. et al.*, 250 Neb. 510, 550 N.W.2d 17 (1996) (observing court need not decide unresolved constitutional speedy trial issue because juvenile statute already confers statutory right to prompt adjudication hearing).

of the juvenile and recommendations for continuous and long-term care and shall be made to effectuate the purposes in subdivision (1) of section 43-246. The juvenile shall appear before the court for a hearing on the report of the evaluation results within ten days after the court receives the evaluation.

(Emphasis supplied.)

As relevant here, § 43-258 authorizes the juvenile court, before adjudicating "any case" under the juvenile code, to order the examination of the juvenile "to aid the court in determining . . . the juvenile's competence to participate in the proceedings." The competency evaluation provisions of § 43-258 apply only to preadjudicated youth,[20] and the statute sets out the procedure for accomplishing such evaluations, including authorizing temporary placement "in the least restrictive environment consistent with the best interests of the juvenile and the safety of the community."[21] The statute also addresses the content of the competency evaluation report, requiring that it "shall include an assessment of the basic needs of the juvenile and recommendations for continuous and long-term care and shall be made to effectuate the purposes in subdivision (1) of section 43-246."[22] Once the juvenile court receives the evaluation report, the court must hold "a hearing on the report of the evaluation results within ten days."[23] But as we discuss later, § 43-258 does not mandate any particular procedure which must be followed if a youth is determined not to be competent.

[8-11] As we have often noted, it is the Legislature's function through the enactment of statutes to declare what is

---

[20] *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003) (holding mental evaluations of juvenile authorized under § 43-258 are not relevant to adjudicated youth).

[21] § 43-258(2)(b).

[22] § 43-258(3).

[23] *Id.*

the law and public policy.[24] In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[25] A court must give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[26] The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, and the Nebraska Juvenile Code must be liberally construed to serve the best interests of juveniles who fall within it.[27]

[12] Applying these principles, we construe the plain language of § 43-258 to recognize, as a matter of public policy, that juveniles accused of delinquency and status offenses have a statutory right to be competent to participate in adjudication proceedings. Surprisingly, the State's appellate brief contains no citation to, or discussion of, the competency provisions in § 43-258. Nevertheless, because the provisions of § 43-258 plainly apply to the adjudication of delinquency and status offenses, we must reject, as contrary to the plain language of § 43-258, the State's contention that juveniles who face adjudication for a status offense need not be competent to participate in the proceedings. The State's first assignment of error has no merit.

### Procedure When Juvenile Not Competent

The State does not argue that preadjudication dismissal of a juvenile petition is never appropriate after a determination

---

[24] See *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

[25] *In re Interest of Seth C.*, 307 Neb. 862, 951 N.W.2d 135 (2020).

[26] *Id*.

[27] *Id.*

that a youth is incompetent.[28] Instead, the thrust of the State's argument is that preadjudication dismissal for lack of competency should not be considered mandatory, as other options may be available to safeguard a juvenile's right to adjudicative competency. The State's appellate briefing focuses on the same two options it mentioned below: either appointing a GAL for Victor and proceeding with adjudication despite his lack of competency or ordering reasonable efforts to restore Victor's competency.

Before we can address the State's contention that preadjudication dismissal of an incompetent youth is not mandatory, we must confront a statutory dilemma. While the Legislature has recognized an accused juvenile's statutory right to be competent to participate in adjudication proceedings, it has not mandated any particular procedure to enforce or protect that right when a youth is found incompetent. In that respect, the statutory competency rights under the juvenile code are distinctly different from those under the criminal code.[29]

Unlike the juvenile code, the criminal code mandates the procedure to be followed once an accused is found not competent to stand trial.[30] Under that procedure:

> If the district court determines that the accused is incompetent to stand trial, then the court must make a determination whether there is a substantial probability that the accused will become competent within the foreseeable future. If the district court determines that there is a substantial probability that the accused will become competent within the foreseeable future, then § 29-1823(1)

---

[28] See, e.g., *In re Interest of LeVanta S.*, 295 Neb. 151, 154, 887 N.W.2d 502, 506 (2016) (noting delinquency and truancy petition was "dropped" after 15-year-old twins with developmental disabilities were found not competent).

[29] Compare § 43-258 with Neb. Rev. Stat. § 29-1823 (Cum. Supp. 2020).

[30] See, *State v. Jones*, 258 Neb. 695, 605 N.W.2d 434 (2000) (noting § 29-1823 sets out decision tree district courts are obligated to follow once accused is found incompetent).

mandates that the court order the accused committed to a state mental hospital or to some other appropriate state-owned or state-operated facility for appropriate treatment until such time as the disability may be removed. Section 29-1823(2) provides for 6-month reviews of the competency determination made by the district court. If, however, the district court determines that there is not a substantial probability that the accused will become competent within the foreseeable future, § 29-1823(3) specifies the appropriate procedure: the State shall either commence civil commitment proceedings or release the accused.[31]

The State's briefing generally suggests, without any analysis, that juvenile courts should follow the same enforcement procedure mandated under the criminal code. While this court has, on occasion, looked to criminal statutes for general guidance when considering similar juvenile statutes,[32] we are not persuaded the Legislature intended juvenile courts to enforce statutory competency rights using only the criminal procedure set out in § 29-1823.

The juvenile code's competency provisions neither reference nor incorporate the criminal code's procedures for enforcing a criminal defendant's competency rights. And if the Legislature had wanted the criminal competency procedures to be imported into juvenile proceedings, it easily could have done so, as it did when it incorporated Neb. Rev. Stat. § 29-1207(4) (Reissue 2016) into the procedure for calculating a juvenile's statutory right to prompt adjudication.[33] Instead, the Legislature has been conspicuously silent and has not

---

[31] *Id.* at 701, 605 N.W.2d at 439 (emphasis omitted).

[32] See, e.g., *In re Interest of Laurance S.*, 274 Neb. 620, 742 N.W.2d 484 (2007) (referring to criminal restitution statute for guidance when determining restitution factors in juvenile disposition).

[33] See Neb. Rev. Stat. § 43-271 (Reissue 2016) (providing computation of 6-month prompt adjudication period "shall be made as provided in section 29-1207, as applicable").

mandated any particular procedure for enforcing a juvenile's statutory right to competency in adjudication proceedings.

So what is a juvenile court to do once it determines that a juvenile is not competent to participate in adjudication proceedings? Is dismissal mandatory? Are other options available? We asked similar questions in *In re Interest of Brandy M. et al.*[34]

There, the State appealed from orders of dismissal entered in 10 separate juvenile adjudication proceedings; each dismissal was predicated on the juvenile court's determination that the youth's statutory right to a prompt adjudication had been violated.[35] We found it was readily apparent from the plain language of the governing statutes that the Legislature intended to provide juveniles with a statutory right to a prompt adjudication hearing. But we also observed that, unlike the speedy trial statutes for criminal defendants,[36] the prompt adjudication statutes for juveniles did not specify the remedy for noncompliance.

*In re Interest of Brandy M. et al.* did not, however, conclude that the absence of a specific statutory enforcement procedure left the juvenile court with no options. To the contrary, we reasoned that since the Legislature had established the statutory right to speedy adjudication without mandating a sanction for violating the right, it had enacted a statutory scheme under which enforcement was directory rather than mandatory.[37] Under that circumstance, we held it was "within the sound discretion of the juvenile court to determine whether absolute discharge of a juvenile petition is in the best interests of a juvenile."[38]

---

[34] *In re Interest of Brandy M. et al., supra* note 19.

[35] See, § 43-271 and Neb. Rev. Stat. §§ 43-277 and 43-278 (Reissue 2016) (establishing juvenile's prompt adjudication rights).

[36] Compare §§ 43-271 and 43-278 with § 29-1207 and Neb. Rev. Stat. §§ 29-1208 and 29-1209 (Reissue 2016).

[37] *In re Interest of Brandy M. et al., supra* note 19.

[38] *Id.* at 524, 550 N.W.2d at 26.

In *In re Interest of Brandy M. et al.*, we found persuasive cases from other jurisdictions in which the courts balanced a juvenile's statutory right to speedy adjudication with protection of the juvenile's best interests. We observed that a "rigid and legalistic interpretation of a juvenile's statutory right to a speedy delinquency adjudication would often be contrary to a juvenile's best interests and, ultimately, contrary to the public interest."[39] Conversely, we observed that it "is rarely in the best interests of a juvenile to have his or her case languish unadjudicated in the juvenile court"[40] because delays in adjudication can affect the quality of evidence, impair a juvenile's defense, prevent a fair hearing, and be detrimental to the youth's rehabilitation in the event of adjudication. To help guide juvenile courts in deciding whether absolute discharge is in a juvenile's best interests, we suggested courts should consider (1) the factors set out in the statutes establishing the juvenile's right to a prompt adjudication, (2) the juvenile's right to a prompt and fair adjudication, and (3) "the future treatment and rehabilitation of the juvenile in the event of an adjudication."[41] And because of the discretion inherent in such a determination, we held that our appellate review should be de novo on the record for an abuse of discretion.[42]

Applying that standard to our de novo review in *In re Interest of Brandy M. et al.*, we concluded the juvenile court had not abused its discretion in granting absolute discharge. In considering whether absolute discharge was in the juvenile's best interests, we observed the statutory adjudication period had run in each of the 10 cases, and we noted the State had adduced no evidence of excludable periods under the applicable statute and had instead offered evidence which, at best, showed only that the juvenile dockets were overcrowded and

---

[39] *Id.* at 522, 550 N.W.2d at 25.

[40] *Id.* at 524, 550 N.W.2d at 26.

[41] *Id.*

[42] See *In re Interest of Brandy M. et al., supra* note 19.

more judges were needed. We also considered the nature of the prompt adjudication right and evidence of how the delay in adjudication had prejudiced the juveniles. Finally, we noted the State had adduced no evidence at all concerning the rehabilitative needs, future treatment, or best interests of any of the juveniles facing adjudication. On that record, we could find no abuse of discretion in the juvenile court's decision to grant absolute discharge.

[13] We find the reasoning of *In re Interest of Brandy M. et al.* instructive when reviewing the juvenile court's dismissal here. Like the prompt adjudication rights at issue in *In re Interest of Brandy M. et al.*, the Legislature has established a juvenile's statutory right to be competent to participate in adjudication proceedings, but it has not mandated a specific procedure for enforcing or protecting that right. The absence of a compulsory or mandatory procedure for enforcing adjudicative competency rights under § 43-258 does not appear to have been an oversight. Instead, it appears the Legislature intended to leave the procedure to the sound discretion of the juvenile court, based on the best interests of the juvenile.[43] Our conclusion in this regard is entirely consistent with Neb. Rev. Stat. § 43-246(7) (Cum. Supp. 2020), which directs that when construing the juvenile code, courts should do so in a manner that "provide[s] a judicial procedure through which [the] purposes and goals [of the juvenile code] are accomplished and enforced" and "in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced."

[14] An appropriate judicial procedure for determining whether preadjudication dismissal is in the best interests of an incompetent juvenile will generally include consideration of (1) the nature and extent of the juvenile's incompetency and the impact it may have on the juvenile's meaningful exercise of other adjudicatory rights, (2) the evaluation report required

---

[43] See *id.*

by § 43-258(3) and any other competent evidence assessing the juvenile's needs and making recommendations for the juvenile's continuous and long-term care, (3) the juvenile's statutory right to be competent while participating in adjudication proceedings, and (4) the future treatment and rehabilitation of the juvenile in the event of an adjudication.[44] The benchmark of this determination is the protection of the best interests of the incompetent juvenile.[45]

We consider these factors as part of our de novo review of the record to determine whether the juvenile court abused its discretion in dismissing the State's petition.[46] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[47]

The only evidence in our record is the competency evaluation report authored by Perez, which concludes that "Victor does not have the capacities associated with competence to stand trial in juvenile court." The State has not contested the methodology applied to determine competency, nor has it contested the juvenile court's determination of incompetency. As such, this case does not afford the opportunity to address the juvenile competency standard, and we express no opinion in that regard. The competency evaluation report concluded Victor has a full-scale IQ of 68, low verbal reasoning abilities, impaired abstract reasoning abilities, and impaired practical knowledge and judgment. He does not understand the basis for his current charges, how to assist his counsel, what it means to deny the allegations of the petition, the role of the juvenile court judge, the role of his defense attorney, or the role of the juvenile probation officer.

---

[44] See, generally, *In re Interest of Brandy M. et al., supra* note 19.

[45] *Id.*

[46] See, generally, *id.*

[47] *Walker, supra* note 9.

The State suggested to the juvenile court that it should consider ordering competency restoration, but it neither expressly requested such an order, nor did it provide any evidence to support the conclusion that competency restoration was feasible. The only evidence in that regard was the competency evaluation report itself, which concluded that even if Victor's understanding of the juvenile court process could be improved, his ability to make reasoned decisions and assist his attorney would remain limited. Further, the report concluded that Victor's mental deficits and developmental delays in reasoning and communication were "likely to endure and to continue to negatively impact his competency." On this record, we can find no abuse of discretion in not ordering competency restoration efforts.

Nor can we find that the juvenile court abused its discretion by not appointing a GAL. First, the State has not specifically assigned error to the failure to appoint a GAL, even though its appellate briefing argues generally that the juvenile court should have "considered" the State's "proposal for such an alternative."[48] To be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.[49]

Second, while the State argues on appeal that the juvenile court should have appointed a GAL and proceeded with the adjudication hearing despite Victor's incompetency, the State's proposal to the juvenile court did not expressly move for the appointment of a GAL, nor did the State explain why a GAL would be appropriate in Victor's case. During the competency review hearing, when referring generally to incompetent youth charged with status offenses, the State remarked: "Furthermore, if the Court is inclined to do so, other states have, in those instances, appointed a [GAL] to represent that juvenile offender's best interests."

---

[48] Brief for appellant at 15, 16.

[49] *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020).

We strongly encourage the appointment of a GAL in cases where an accused youth is found to be incompetent, in order to provide the court with appropriate information regarding the juvenile's best interests and, in particular, whether preadjudication dismissal is in the juvenile's best interests. But here, the State argues the juvenile court should have considered appointing a GAL for a different purpose: as an "alternative[] for safeguarding competency issues"[50] during the adjudication hearing and "subsequent court proceedings."[51] Not only did the State fail to expressly move for the appointment of a GAL, but it adduced no evidence tending to show how the appointment of a GAL would protect Victor's adjudicative competency rights or remediate his inability to understand the proceedings or consult with and assist his counsel. While there may be circumstances under which the appointment of a GAL can effectively address adjudicative incompetence, the State's failure to expressly request such an appointment or to present any evidence on that issue left the juvenile court without any meaningful basis for considering the appointment of a GAL for the purpose of proceeding with the adjudication hearing.

Finally, the State presented no evidence at all of the possible future treatment and rehabilitation options for Victor in the event of an adjudication. Consequently, our record does not permit consideration of this factor when deciding whether preadjudication dismissal was in Victor's best interests given his incompetency.

Although our discussion has necessarily been limited to the options presented to the juvenile court once Victor was found to be incompetent, undoubtedly there are other options available to a juvenile court judge tasked with determining whether preadjudication dismissal, or some other procedure, is in the best interests of an incompetent juvenile. In future cases, to assist the juvenile court in identifying available options, we

---

[50] Brief for appellant at 10.

[51] *Id.* at 15.

encourage the appointment of a GAL for the juvenile, and we encourage the parties to make specific suggestions and offer appropriate supporting evidence, so the court has as much information as possible when deciding which option would be in the juvenile's best interests. And to assist in meaningful appellate review, we encourage judges to explain their reasons for selecting one option over the others.

Here, after determining that Victor was not competent to participate in adjudication proceedings, it was within the sound discretion of the juvenile court to determine, based on Victor's best interests, how to proceed. While a juvenile court may, depending on the circumstances, have viable options other than preadjudication dismissal, our de novo review of this record does not show an abuse of discretion in dismissing the petition.

## CONCLUSION

For the foregoing reasons, we affirm the juvenile court's preadjudication dismissal of the truancy petition based on the juvenile's lack of competency to participate in the proceedings.

Affirmed.