IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF CORDALE M. ET AL.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF CORDALE M. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

STACY M., APPELLANT, AND CLARENCE M. AND
ROSEBUD SIOUX TRIBE, APPELLEES.


Filed December 28, 2021.    No. A-21-296.


Appeal from the County Court for Cass County: LAWRENCE D. GENDLER, Judge. Affirmed.

Karen S. Nelson, of Burnett Wilson Law, L.L.P., for appellant.

Sarah M. Sutter, Deputy Cass County Attorney, for appellee State of Nebraska.


PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Stacy M. appeals from an order of the Cass County Court, sitting as a juvenile court, which overruled her motion to dismiss the State's amended petition to adjudicate her children. She argues that her motion to dismiss should have been granted because her due process rights were violated and the State's amended petition failed to comply with the requirements of the Indian Child Welfare Act (ICWA), Neb. Rev. Stat. §§ 43-1501 to 43-1517 (Reissue 2016). Based on the reasons that follow, we affirm.

BACKGROUND

On July 23, 2020, the State filed a petition alleging Stacy's three minor children were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because their father had committed felony assault on one child, and Stacy did not render immediate aid to the child and condoned the actions of the father, thereby placing the children at risk for harm. A motion for ex parte temporary custody was also filed, which the court granted.

A detention hearing was held on August 5, 2020. Stacy did not contest removal of the children or the Department of Health and Human Services (Department) taking custody of the children. Rather, she contested the children's placement and had filed a motion to have all three children placed with their maternal uncle.

At the end of the hearing, the court overruled Stacy's motion for placement of all the children with her uncle. Further, the court stated it appeared that the child named Dametre may fall under ICWA and that if he did, the State would have a higher burden of proof for removal. The court stated that the case would be called back for a pretrial conference and if ICWA applied to Dametre, then the court "need[ed] to do some things a little differently."

Following the August 5, 2020, hearing, the court entered a protective custody order detaining the children, finding it was contrary to their welfare to return home based on the initial reasons for removal, and placing the children in the custody of the Department.

On August 11, 2020, the Department sent notification to the Rosebud Sioux Tribe informing them that a petition to adjudicate has been filed in regard to Dametre and that he might be eligible for membership in the tribe. A copy of the ICWA notification sent to the tribe was also sent to Stacy. On September 15, 2020, the tribe filed a notice of intervention in regard to Dametre.

The next hearing was held on January 20, 2021, and was set to address several motions, as well as Dametre's eligibility under ICWA. At the start of the hearing, Stacy's attorney told the court that she had just received a packet of information from the Department, including an August 19, 2020, letter indicating that Dametre qualified for enrollment in the tribe, as well as the notice of intervention filed by the tribe on September 15, 2020. Stacy's attorney stated that she was not sure if she ever received a copy of these documents before that day. She further stated that regardless of when she received those documents, it was clear to her from the beginning of the case that Dametre was an Indian child for purposes of ICWA and, therefore, a new detention hearing needed to take place that complied with ICWA. She expressed concern that because Dametre is an Indian child, the wrong standards were applied at the August 2020 detention hearing. The State agreed that a new detention hearing should be held because Dametre was eligible for enrollment in the tribe, but stated that was the purpose of the January 20 hearing. The court subsequently allowed the State's ICWA expert to testify at the hearing.

Following the hearing, the court entered an order on January 21, 2021. It found that based on the testimony of the ICWA expert, active efforts as required by § 43-1505(4) had been made to prevent Dametre's removal from his parent's home and that he would face imminent harm if he were to be returned. The court also stated that it would consider at a subsequent hearing whether or not the active efforts standard had continued to be addressed with regard to Dametre.

The State subsequently filed an amended petition to adjudicate Stacy's three children on February 4, 2021. Stacy filed a motion to dismiss the amended petition on February 12, alleging

the amended petition did not comply with § 43-1505 of ICWA in that it did not allege that active efforts needed to be made or that continued custody of the child by Stacy was likely to result in serious emotional or physical damage to the child. The motion to dismiss also alleged that the delay between the tribe's notice of intervention on September 15, 2020, and the January 20, 2021, detention hearing violated her due process rights.

A further hearing took place on March 10, 2021. The caseworker from the Department testified and identified the measures she took to ensure compliance with ICWA. She also noted Dametre's fears about returning home. An Indian child welfare specialist for the tribe also testified. She concluded Dametre would likely suffer serious emotional damage if he was returned home.

The court entered an order on March 11, 2021, overruling Stacy's motion to dismiss. It granted the State leave to amend the amended petition to conform to ICWA. In regard to the detention hearing, the court noted that an extensive hearing was held on January 20, 2021, once notice was provided that Dametre was eligible for enrollment in the tribe. The court stated that at the January 20 hearing, all parties were put on notice that the higher standards of ICWA would be applied prospectively as to Dametre. The court also found that the prior January 21, 2021, findings were sufficient to keep Dametre out of the family home subject to the March 10 proceeding where additional evidence was required for such to continue. The court concluded that the State had met the burden required by § 43-1505(5) in regard to Dametre.

## ASSIGNMENTS OF ERROR

Stacy assigns that the juvenile court erred in (1) ordering that the minor children remain in out-of-home placement because her due process rights were violated due to insufficient notice that ICWA applied and because of substantial delay between the tribal intervention and a detention hearing under ICWA, and (2) overruling her motion to dismiss because the State's petition failed to comply with the required provisions of ICWA.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Noah C.*, 306 Neb. 359, 945 N.W.2d 143 (2020). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *Id.*

The determination of whether the procedures afforded to an individual comport with constitutional requirements for procedural due process presents a question of law. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020).

## ANALYSIS

Stacy first assigns that the juvenile court erred in ordering that the minor children remain in out-of-home placement because her due process rights were violated in two ways: (1) she received insufficient notice that ICWA applied and (2) there was a substantial delay between the tribal intervention and a detention hearing under ICWA. We first note that Stacy's assignment of error refers to "the minor children" but alleges errors that relate to ICWA. Because ICWA only

applies to Dametre, we address her assignment of error only as it relates to Dametre, and not the other two children.

Stacy argues that her due process rights were violated because she received insufficient notice that ICWA applied to Dametre. She contends that when the tribe filed its notice of intervention on September 15, 2020, she did not receive proper notice of the intervention. The notice filed by the tribe was file stamped and made part of the record on September 15. Stacy acknowledges that the Department and the Cass County Attorney's office received notice at the same time the intervention was filed with the court, but contends she did not receive notice that Dametre was eligible for enrollment in the tribe until the hearing on January 20, 2021.

Stacy primarily focuses on § 43-1505(1), which sets forth the notice requirements for ICWA:

> In any involuntary proceeding in a state court, when the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall send a notice conforming to the requirements of 25 C.F.R. 23.11 to the parents, the Indian custodian, and the Indian child's tribe or tribes, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . .

Stacy argues that she did not receive notice as required by § 43-1505(1) when the tribe filed its notice of intervention on September 15, 2020. However, the statute does not require such notice. The statute requires notice to the parents, as well as the Indian custodian and the Indian child's tribe, of a pending proceeding and the tribe's right of intervention when the court knows or has reason to know that an Indian child is involved in a proceeding seeking foster care placement of that child. The record reflects that the Department sent notice of the pending proceedings and of the tribe's right of intervention as required by § 43-1505(1) to the tribe on August 11, 2020. The same notice was sent to Stacy, in which she was advised of the potential applicability of ICWA to Dametre. Accordingly, Stacy is deemed to have received the notice required by § 43-1505(1). She does not argue that she did not receive it. The tribe subsequently filed its notice of intervention on September 15. The statute does not require that Stacy receive notice again at that point.

Further, it is clear from the record that Stacy's due process rights were not violated because Stacy was made aware from the beginning of the case that ICWA may apply. At the first hearing held on August 5, 2020, the court told Stacy that Dametre may fall under ICWA and that if he did, there would be a higher burden for the State in regard to removal. The court also stated that the case would be called back for a pretrial conference and if ICWA applied then it would need to do "some things a little differently."

At the January 20, 2021, hearing, Stacy's counsel claimed she had just received the tribe's notice of intervention and the letter indicating Dametre qualified for enrollment in the tribe, but also stated she was uncertain if she had received a copy of these documents previously. The court noted that these documents had been filed in the case file at the time they were received. The parties agreed that at the time of the initial detention hearing in August 2020 it was not known if Dametre was eligible for enrollment in the tribe so the ICWA standards were not applied. At the January 20, 2021, hearing, Stacy's counsel stated it was clear to her from the beginning of the case that Dametre was an Indian child for purposes of ICWA.

- 4 -

As of the January 20, 2021, hearing, all parties had notice that Dametre was eligible for enrollment in the tribe under ICWA and all parties were put on notice that the higher standards would be applied prospectively as to Dametre. A subsequent detention hearing was held to comply with ICWA standards. As the juvenile court stated in its March 11 order, there was "abundant notice" to the parties that the elevated ICWA standards would apply. As a result, it concluded that Stacy received sufficient notice that ICWA applied to Dametre and that her due process rights were not violated in that regard.

Stacy next argues that her due process rights were violated because there was an unreasonable delay in conducting a protective custody hearing between September 15, 2020, the day the tribe filed its notice of intervention, and March 10, 2021, the day the detention hearing was completed. She relies on *In re Interest of Carmelo G.*, 296 Neb. 805, 896 N.W.2d 902 (2017), and *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998), in support of her argument.

In *In re Interest of Carmelo G., supra*, there was an 8-month delay between the child's removal from the home by an ex parte order and the detention hearing. The Nebraska Supreme Court recognized that Neb. Rev. Stat. § 43-248(2) (Cum. Supp. 2018) allows the State to take a juvenile into custody without a warrant or order of the court when it appears the juvenile "is seriously endangered in his or her surroundings and immediate removal appears to be necessary for the juvenile's protection." However, the parent retains a liberty interest in the continuous custody of his or her child. *In re Interest of Carmelo G., supra.* The court stated that an ex parte order authorizing temporary custody with the Department is permitted because of its short duration and the requirement of further action by the State before custody can be continued. *Id.* See, also, *In re Interest of R.G., supra.* But "the State may not, in exercising its parens patriae interest, unreasonably delay in notifying a parent that the State has taken emergency action regarding that parent's child nor unreasonably delay in providing the parent a meaningful hearing." *In re Interest of Carmelo G.*, 296 Neb. at 813-14, 896 N.W.2d at 908 (emphasis omitted), quoting *In re Interest of R.G., supra*. The court concluded therefore, that following the issuance of an ex parte order for temporary immediate custody, "[a] prompt detention hearing is required in order to protect the parent against the risk of an erroneous deprivation of his or her parental interests." *In re Interest of Carmelo G.,* 296 Neb. at 814, 896 N.W.2d at 908, quoting *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004). The court reversed the trial court's detention order after determining the 8-month delay was an unreasonable delay in providing the parent a meaningful hearing and violated the parent's procedural due process rights.

In *In re Interest of R.G., supra*, the Supreme Court concluded that the mother's due process rights were not violated by a 14-day delay between the entry of an ex parte order and that of a detention order when she was given an opportunity to be heard at the detention hearing and was allowed to visit her children in the interim. The Court cautioned, however, that "the 14 days elapsing between the entry of the ex parte order and the hearing poise the procedures employed in this case on the brink of unreasonableness." *Id.* at 423, 470 N.W.2d at 792.

Stacy argues that once the tribe filed its notice of intervention on September 15, 2020, the heightened safeguards of ICWA applied prospectively, and the required ICWA detention hearing did not occur until either 127 days (January 20, 2021) or 176 days (March 10, 2021) after the filing

of the tribal intervention. She asserts that such a delay is inherently unreasonable and the type of delay contemplated under *In re Interest of Carmelo G., supra*. We disagree.

In the present case, a detention hearing took place 13 days after the filing of the ex parte order, and the court entered a protective custody order on August 6, 2020. At the time of the initial detention hearing, it had not been determined that ICWA was applicable to Dametre. However, once the tribe intervened, a further hearing needed to take place.

A further hearing was held on January 20, 2021, at which time various motions were considered as well as whether ICWA applied to Dametre. Upon determining ICWA did apply, the court found that active efforts had been made to prevent Dametre's removal from Stacy's home and that he would face "imminent harm" if he were returned to the parental home. A further hearing continuing the detention hearing was held on March 10. Such delay was not unreasonable given the circumstances in this case. We conclude that Stacy's due process rights were not violated.

Stacy next assigns that the juvenile court erred in overruling her motion to dismiss because the State's petition failed to comply with the required provisions of ICWA. Under this assignment of error, however, Stacy argues that the evidence presented was insufficient for the juvenile court to find that active efforts had been provided. She also argues the juvenile court failed to specifically find that continued placement in the parental home would likely result in the child experiencing serious emotional or physical damage. Accordingly, Stacy assigns one issue as error, but argues two other issues. To be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief. *In re Interest of Victor L.*, 309 Neb. 21, 958 N.W.2d 413 (2021). Because Stacy has failed to assign and argue her second alleged error correctly, we do not address it.

CONCLUSION

We conclude that the juvenile court did not err in overruling Stacy's motion to dismiss the State's amended petition to adjudicate her children. Accordingly, the court's order is affirmed.

AFFIRMED.