723 P.2d 1278 (1986)
STATE of Alaska, Petitioner,
v.
J.D.S., A Minor, Respondent.
No. S-1148.
Supreme Court of Alaska.
August 29, 1986.
Rehearing Denied October 20, 1986.
David Mannheimer, Asst. Atty. Gen., Anchorage, Harold M. Brown, Atty. Gen., Juneau, for petitioner.
Mitchel J. Schapira, Anchorage, for respondent.
Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION
MATTHEWS, Justice.
J.D.S. and another juvenile were charged with robbing a convenience store and murdering its clerk. The state filed a petition under AS 47.10.060 seeking a waiver of juvenile jurisdiction so that J.D.S. could be prosecuted as an adult. Following a six day hearing, the trial court concluded that J.D.S. was amenable to treatment as a *1279 child and therefore declined to waive juvenile jurisdiction. On appeal, the court of appeals affirmed. We granted the state's petition for hearing and reverse.
AS 47.10.060(a) provides that the superior court shall waive juvenile jurisdiction:
If the court finds at a hearing on a petition that there is probable cause for believing that a minor is delinquent and finds that the minor is not amenable to treatment under this chapter, it shall order the case closed. After a case is closed under this subsection, the minor may be prosecuted as an adult.
Subsection (d) defines the phrase "not amenable to treatment":
A minor is unamenable to treatment under this chapter if the minor probably cannot be rehabilitated by treatment under this chapter before reaching 20 years of age. In determining whether a minor is unamenable to treatment, the court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor.
The trial court found that J.D.S. probably could not be rehabilitated by treatment as a juvenile before reaching twenty years of age.[1] The court stated, "[t]he chance that [J.D.S.] will be rehabilitated by age 20 is not good," describing the outlook for treatment by age 20 as "dismal." Despite this, the court declined to order a waiver of juvenile jurisdiction. It perceived that J.D.S.'s chances of being rehabilitated if treated as an adult were even less favorable.
In basing its decision on this comparison, the court committed an error of law. The statute requires that the court determine whether or not a minor probably can be rehabilitated by treatment as a juvenile before reaching the age of twenty. The facilities available to treat minors are relevant to making that determination. However, whether rehabilitation will be accomplished if juvenile jurisdiction is waived is not relevant to that determination. The statute does not authorize a finding of amenability to treatment on the basis that rehabilitation will probably not occur if the minor is prosecuted as an adult.
The judgment of the court of appeals is REVERSED and the court of appeals is directed to REMAND the case to the superior court for entry of an order waiving juvenile jurisdiction.
RABINOWITZ, Chief Justice, with whom COMPTON, Justice joins dissenting.
In its "Memorandum of Decision Denying Waiver" the superior court concluded in part that "based upon the assumption that [the minor] has consented to treatment through age 20, I find that he is amenable to treatment as a child." In light of this finding I am of the view that the case should be remanded to the court of appeals with directions to remand to the superior court. The purpose of this remand would be to afford the superior court the opportunity to clarify its "Memorandum of Decision Denying Waiver." As it now stands the superior court's decision lacks sufficient clarity to provide an appellate court with a clear understanding of the basis of its decision.[1]
I agree that consideration of the question of whether rehabilitation will be accomplished if juvenile jurisdiction is waived is irrelevant to the AS 47.10.060(d) determination of whether a minor probably can be rehabilitated by treatment as a juvenile before reaching twenty years of age. I would hold that in formulating its clarifying decision on remand the superior court should enter unambiguous and internally consistent findings on the issue of waiver. Given the importance of this determination *1280 both to society and to the individual minor I consider it preferable to require the superior court to clarify its waiver decision and in so doing to employ proper criteria. I think it inappropriate to direct the entry of an order waiving juvenile jurisdiction in the circumstance where the superior court in part found that J.D.S. is amenable to treatment as a child.

MEMORANDUM OF DECISION DENYING WAIVER
This case concerns the death of Lawrence M. Whimple, a clerk at a Qwik Stop store on July 3, 1984, in the vicinity of Arctic Boulevard and Tudor Road in the Municipality of Anchorage.
Participating in the homicide of Mr. Whimple were Saathoff, date of birth July 18, 1970 and M.L.P., date of birth July 24, 1967. The decedent was shot five times with a .357 handgun which had been stolen by the boys from Saathoff's home a few days earlier.
The actual shooting of Mr. Whimple was performed by M.L.P. Both juveniles participated in planning the robbery of the store with the knowledge that the clerk on duty would be Mr. Whimple, whom they knew and who knew them. Both juveniles are equally responsible for the homicide in a moral as well as legal sense with Saathoff being the instigator.
The homicide of Mr. Whimple was a planned robbery and murder. The youths intended to rob the victim and then to shoot him to avoid the presence of witnesses. Their plan was executed.
There is probable cause to believe that both juveniles committed the crimes of first degree robbery and first degree murder.
Saathoff's history dating back from these offenses includes on July 2, 1984 in the evening pointing a loaded .357 at a peer who was playing tag with his friend and saying "if you move one more step, I will shoot off your balls"; on June 30, 1984, holding up a paperboy at gunpoint and mentioning that he could kill the paperboy and his companion; burglary of his parents' home during which the .357 and two other guns were stolen and shots were fired inside the residence; skipping school and being involved in many fights at school, acting in a "head strong" manner and encouraging others to be truant; in May, 1983, after attacking and cutting another boy with a knife stating to an adult who intervened, "I should have just killed him"; on April 16, 1983 biting and hitting the counselor at the Alaska Children's Services shelter; and having a well established pattern of running away from home.
During the police interview Saathoff was matter-of-fact and not emotional in describing the victim's death and appeared to be self-satisfied over his role in the crimes. He and M.L.P. joked about the shooting and death of Mr. Whimple. They returned to the Qwik Shop to see what was happening a while after the crimes. He appeared to be "wise to the ways of the world" during his police interview.
Immediately after the crimes Saathoff and M.L.P. took a taxi from a restaurant to the vicinity of M.L.P.'s home where both were staying. Saathoff was described by the taxi driver as being hyper, cocky, outgoing, making decisions for both boys and he asked her if she had any "protection" (mace, knife or gun).
Saathoff has been classified as learning disabled and emotionally disturbed, he refuses to accept the consequences of his actions and when he cannot have his own way, he loses control. He operates on the revenge theory having to get even for any real or imagined slight. He does not act impulsively but with a plan. He responds to confrontation by becoming threatening. He provokes his peers so no one is close to him.
It is typical of Saathoff to project the responsibility for his actions on to others and when confronted about his actions to vent his anger on to the one confronting him. He becomes threatening when forced to deal with his actions and often loses control and then takes a long time to regain self-control. He never admits to being wrong.
The psychiatric and psychological evidence established that Saathoff is suffering *1281 from a conduct disorder, "undersocialized and aggressive," that he is resentful of authority, has superficial emotional ties to others, has difficulty in forming relationships, lacks conscience, is without internal controls, Saathoff will only do well if closely supervised which is borne out by his behavior, when his father is at home.
The chance that Saathoff will be rehabilitated by age 20 is not good. He is undersocialized, aggressive, distractable, hyperactive, has no capacity to delay gratification and when confronted, acts aggressively. The onset of his antisocial behavior was very early, age nine or ten. There is no evidence that he wants to change.
Despite the dismal outlook for Saathoff's treatment by age 20, I must look at the alternatives. If the juvenile is treated as an adult, he will be sentenced to a possible thirty years to serve, the same as his accomplice is subject to pursuant to a plea bargain. I know of no treatment he will receive in the adult system which would give him any opportunity to internalize a value system that would give any degree of assurance that he would act responsibly in an unstructured setting. After serving whatever portion of thirty years that he might have to serve, I believe Saathoff would constitute as great a danger to society as he does today.
Society's best opportunity to be protected from the actions of which Saathoff has demonstrated his capacity is for him to be dealt with in the juvenile justice system where he may be classified to the closed treatment unit at McLaughlin Youth Center if deemed appropriate by the Commissioner of Health and Social Services, the court having no authority in that decision. In the closed treatment unit an effort would be made to instill a value system which would control Saathoff even after he is released from custody.
Therefore, based upon the assumption that Saathoff has consented to be treated through age 20, I find that he is amenable to treatment as a child.
An additional reason for retaining Saathoff in the juvenile system is that he is only 14 years old, has not begun to mature, and has the appearance of an 11-year old. Confining an immature boy among adults is inappropriate and would necessitate solitary confinement by the Department of Corrections. Also, no information was presented about programs available in the adult system for youthful offenders and from my prior experience I know of nothing like the closed treatment unit program at McLaughlin Youth Center which offers an opportunity for rehabilitation of juvenile delinquents.
Therefore, because of the paucity of programs available in the adult system and the only viable program being available for juvenile delinquents, I have weighted my decision on amenability toward the juvenile system. I am not optimistic of success in this case but find a denial of waiver to be in both Saathoff and society's best interest.
DATED at Anchorage, Alaska, this 19th day of November, 1984.
 /s/ Victor D. Carlson
 Victor D. Carlson
 Superior Court Judge
NOTES
[1] The trial court's Memorandum of Decision Denying Waiver is set forth in the appendix.
[1] In Uchitel Co. v. Telephone Co., 646 P.2d 229, 236 n. 16 (Alaska 1982) we said in part: "Findings are sufficient if they provide the reviewing court with a clear understanding of the basis for the trial court's decision."