Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/16/2026 08:07 AM CST

Nebraska Supreme Court Advance Sheets
320 Nebraska Reports
IN RE INTEREST OF JOHNNY H.
Cite as 320 Neb. 675

in re interest of Johnny H., a child
under 18 years of age.

State of Nebraska, appellee, v.
Johnny H., appellant.

___ N.W.3d ___

Filed January 16, 2026.    Nos. S-25-137 through S-25-141.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.
2. **Juvenile Courts: Appeal and Error.** Ordinarily, an appellate court reviews juvenile cases de novo on the record and reaches a conclusion independent of the juvenile court's findings.
3. **____: ____.** A juvenile court's determination of amenability under Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016) involves the sort of broad discretion that warrants appellate review de novo on the record for an abuse of discretion.
4. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
5. **Juvenile Courts: Appeal and Error.** In juvenile cases, the determination of appealability is a fact-intensive inquiry.
6. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.
7. **Final Orders.** It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.
8. **Final Orders: Appeal and Error.** Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.
9. **Statutes: Appeal and Error.** When construing a statute, a court's analysis always begins with the text; statutory language is given its plain and

ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

10. **Statutes: Legislature: Intent.** Courts must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

11. ____: ____: ____. It is the court's duty to discover, if possible, legislative intent from the statute itself.

12. **Statutes: Intent.** A court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves its purpose.

13. **Juvenile Courts: Minors.** Because the foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, statutes under the juvenile code must be liberally construed to serve the best interests of the juveniles who fall within it.

14. **Statutes: Legislature: Intent.** The primary source of insight into the intent of the Legislature is the language of the statute.

15. **Courts: Prosecuting Attorneys: Minors.** The primary purpose of Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016) is to provide prosecutors and courts with predictive information to consider when making future filing, charging, and transfer decisions involving the juvenile.

16. **Juvenile Courts: Minors: Words and Phrases.** The plain and ordinary meaning of the term "amenability" as used in Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016) refers to the likelihood that a particular juvenile will respond effectively in the future to the type of rehabilitative services that can be provided under the Nebraska Juvenile Code. Relatedly, the phrase "a juvenile who is not amenable to rehabilitative services" refers to a juvenile who, based on the evidence presented, is unlikely to respond effectively in the future to the rehabilitative services that can be provided under the juvenile code.

17. **Juvenile Courts: Pleadings: Proof: Minors.** When the State files a motion under Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016) requesting a finding that a juvenile is not amenable to rehabilitative services, the State bears the burden of proving nonamenability.

18. **Courts: Statutes: Proof.** Absent statutory language requiring a different standard of proof, Nebraska courts in civil cases generally apply the preponderance standard.

19. **Juvenile Courts: Proof: Minors.** In hearings pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016), a juvenile's amenability to rehabilitative services must be established by a preponderance of the evidence.

20. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

21. **Juvenile Courts: Appeal and Error.** When reviewing a juvenile court's decision de novo on the record for an abuse of discretion, if the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over the other.

22. **Constitutional Law: Juvenile Courts: Statutes: Legislature.** Pursuant to Neb. Const. art. V, § 27, the juvenile court is a statutorily created tribunal established by the Legislature with such powers as the Legislature may provide.

23. **Juvenile Courts: Statutes: Jurisdiction.** As a statutorily created court of limited jurisdiction, a juvenile court has only the authority conferred upon it by statute.

24. **Juvenile Courts: Statutes: Jurisdiction: Appeal and Error.** When considering whether a juvenile court acted within its authority, an appellate court will look to the authority conferred by statute.

25. **Juvenile Courts: Probation and Parole.** Once a juvenile court enters a dispositional order of probation, it is not authorized to change the terms or conditions of probation unless the applicable statutory procedures are followed.

26. **Juvenile Courts: Statutes: Jurisdiction: Probation and Parole.** There is no express statutory authority in the Nebraska Juvenile Code for a juvenile court to terminate probation or jurisdiction based solely on a finding of nonamenability under Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016).

27. **Statutes.** It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.

Appeals from the Separate Juvenile Court of Sarpy County: Jonathon D. Crosby, Judge. Affirmed in part, and in part vacated and remanded for further proceedings.

Todd A. West, Sarpy County Public Defender, and Dennis P. Marks for appellant.

Andrew T. Erickson, Deputy Sarpy County Attorney, for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ., and Welch, Judge.

Stacy, J.

In five different cases, the separate juvenile court of Sarpy County entered postdispositional orders pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016), finding that an adjudicated juvenile was not amenable to rehabilitative services and further ordering that the juvenile's probation and the court's jurisdiction be "terminated unsuccessfully."

In these consolidated appeals, the juvenile challenges the court's finding of nonamenability under § 43-2,106.03 and its termination of probation and jurisdiction based on that finding. For reasons we will explain, we affirm the juvenile court's finding of nonamenability but conclude it was plain error for the juvenile court to change the dispositional orders based solely on such finding. We therefore affirm the orders in part, and in part vacate the orders and remand the causes to the juvenile court for further proceedings.

## I. BACKGROUND

Johnny H. was born in 2007. At the age of 14, he was adjudicated in a truancy case and subsequently placed on an indefinite term of probation. In the years that followed, he was adjudicated in four separately docketed delinquency cases and was placed on indefinite terms of probation in each case. It does not appear from the appellate record that Johnny appealed from any of the original dispositional orders.

In January 2025, while Johnny was still on juvenile probation in all five cases, the State filed a felony criminal complaint against him in the county court for Sarpy County, charging attempted robbery. One week later, the State filed identical motions in all five pending juvenile cases. The motions sought a finding, pursuant to § 43-2,106.03, that Johnny was not amenable to rehabilitative services available under the Nebraska Juvenile Code. The motions also asked the court to "terminate jurisdiction [in each juvenile case] as unsuccessful."

Section 43-2,106.03 provides:

Any time after the disposition of a juvenile described in subdivision (1), (2), (3)(b), or (4) of section 43-247, upon the motion of any party or the court on its own motion, a hearing may be held regarding the amenability of the juvenile to the rehabilitative services that can be provided under the Nebraska Juvenile Code. The court may enter an order, based upon evidence presented at the hearing, finding that a juvenile is not amenable to rehabilitative services that can be provided under the Nebraska Juvenile Code. The reasons for such a finding shall be stated in the order. Such an order shall be considered by the county attorney in making a future determination under section 43-276 regarding such juvenile and by the court when considering a future transfer motion under section 29-1816 or 43-274 or any future charge or petition regarding such juvenile.

### 1. Nonamenability Hearing

On January 31, 2025, the juvenile court held a consolidated hearing on the State's § 43-2,106.03 motions. The only witness called by the State was Johnny's probation officer, who testified about the rehabilitative services Johnny had been provided over the years, how Johnny responded to those services, and which community-based services remained available to Johnny. The court also received into evidence selected pleadings, orders, evaluations, and reports from all five of Johnny's juvenile court cases, as well as a certified copy of the felony criminal complaint and the affidavit of probable cause filed in the county court. We summarize that evidence in the sections that follow.

### (a) Truancy Adjudication

In June 2022, a juvenile petition was filed against Johnny in the Sarpy County Separate Juvenile Court alleging he was habitually truant from school. Johnny admitted the allegations

and was adjudicated under Neb. Rev. Stat. § 43-247(3)(b) (Reissue 2016). After a dispositional hearing, he was placed on juvenile probation "for an open ended period of time" and was ordered to participate in rehabilitative services, including individual therapy, cooperating with a community youth coach, and participating in prosocial activities. He was also ordered to "attend school daily, without unexcused absences or tardies, work to his potential,[] display appropriate behavior and cooperate with informal supports the faculty find necessary to help him be successful."

### (b) Theft Adjudication

In December 2023, while Johnny was still on probation in the truancy case, a delinquency petition was filed in the Douglas County Separate Juvenile Court alleging two counts. The first count alleged Johnny committed an act which would constitute assault in the third degree, and the second count alleged he had committed an act which would constitute theft by unlawful taking in an amount less than $500. In February 2024, Johnny admitted the theft allegation and, pursuant to a plea agreement, the assault allegation was dismissed. He was adjudicated pursuant to § 43-247(1), and the case was transferred to the Sarpy County juvenile court. After a dispositional hearing, Johnny was placed on probation "for an open ended period of time" and was ordered to comply with the probation order in the truancy case. He was also ordered to complete summer school and to complete an anger management program.

### (c) Assault Adjudication

In July 2024, another juvenile petition was filed in the Douglas County Separate Juvenile Court alleging Johnny had committed an act which would constitute assault in the third degree by mutual consent. Johnny was adjudicated pursuant to § 43-247(1) (Cum. Supp. 2024), and the case was transferred to the Sarpy County juvenile court. After a dispositional hearing, the juvenile court ordered Johnny to remain on

probation "for an open ended period of time" and to comply
with all previous probationary orders.

### (d) Second Theft Adjudication

In August 2024, another juvenile petition was filed in the
Sarpy County Separate Juvenile Court alleging Johnny had
committed an act which would constitute burglary and an
act which would constitute theft by unlawful taking ($500 to
$1,500). Prior to adjudication, the court ordered that Johnny
be detained at the Juvenile Justice Center in Sarpy County,
Nebraska, "until further order of the Court," based on a find-
ing that "the physical safety of persons within the community
would be seriously threatened if he were not detained today."

In September 2024, Johnny was released from the Juvenile
Justice Center and placed in a shelter, but he lost that place-
ment 1 week later when he was cited for a new law violation.
As an alternative to detention, Johnny was released to his
father and placed in the custody of the Sarpy County sheriff for
participation in the "C.A.R.E." program.

At Johnny's adjudication hearing in November 2024, he
admitted the theft allegation, and the State dismissed the bur-
glary allegation pursuant to a plea agreement. Johnny was
adjudicated pursuant to § 43-247(2), and, after a dispositional
hearing, he was ordered to remain on juvenile probation "for
an open ended period of time," subject to the terms and condi-
tions of the prior probationary orders.

### (e) Robbery Adjudication

In October 2024, a petition was filed in the Sarpy County
Separate Juvenile Court alleging Johnny had committed an
act which would constitute the felony of robbery. Johnny
admitted the allegations and was adjudicated pursuant to
§ 43-247(2). After a dispositional hearing, the court ordered
that Johnny continue on probation "for an open ended period
of time," subject to the terms and conditions of the prior proba-
tionary orders.

### (f) Probation Revocation

In October 2024, the State filed a motion to revoke probation or change the disposition previously ordered in at least one of the pending cases, alleging that Johnny had violated the probation order by receiving a citation for "refusing to comply with a lawful order" and "getting into an altercation with another youth and assaulting a staff member in the process." Johnny admitted the allegations of an amended motion to revoke, and the court accepted his admission and found he had violated his probation. After a dispositional hearing in December 2024, the court found "the best interests of the juvenile herein would be served by said juvenile remaining placed on probation," and it ordered Johnny to continue on probation "subject to previous terms and conditions . . . for an open ended period of time."

### (g) Felony Criminal Case

In January 2025, the State filed a criminal complaint against Johnny in the county court for Sarpy County, charging attempted robbery. The affidavit of probable cause stated that on December 31, 2024, a 17-year-old victim was approached at a party by another juvenile, identified as Johnny, who demanded $20. When the victim refused, Johnny demanded the victim's coat and neck chain. When the victim again refused, Johnny struck the victim multiple times in the face and continued to hit and kick the victim after he fell to the ground. The victim sustained significant bruising and swelling to his face, eyes, and nose.

Johnny was detained in the Juvenile Justice Center on the felony charge, but he bonded out and was again placed in the C.A.R.E. program as an alternative to detention. The current status of his felony case is not reflected in the appellate record.

### (h) Probation Officer's Testimony

Johnny's juvenile probation officer, Nathan Bohy, was the only witness to testify at the January 31, 2025, hearing on

the State's § 43-2,106.03 motions. In addition to the evidence described above, Bohy summarized the rehabilitative services provided to Johnny in juvenile court since 2022 and Johnny's response to those services. The court made an express finding that Bohy's testimony was credible.

Bohy testified that out-of-home placements had been explored but that multiple shelter placements had been denied because of Johnny's criminal charges and his aggressive behaviors. Regarding compliance with the terms and conditions of his probation, Bohy also testified that Johnny had not completed the anger management program, explaining that he was removed from the program for lack of attendance, but was scheduled to restart the program in February 2025 "if he's still on probation." Johnny had been ordered to attend therapy throughout his time on probation, but his attendance at therapy was "sporadic."

Bohy acknowledged that Johnny had complied with some conditions of his probation, noting that he successfully completed meetings with two community youth coaches and regularly engaged in two prosocial activities: boxing and football. Bohy also testified that when Johnny started juvenile probation, his school credits were significantly deficient but that at the time of the hearing, he was almost up to grade level and was on track to graduate from high school.

In sum, Bohy testified that Johnny had completed some probation conditions but had failed to complete others. And he testified that while on probation and receiving services, Johnny continued to violate the law and pick up criminal charges, noting that after successfully completing the C.A.R.E. program on December 2, 2024, he picked up new criminal charges less than 1 month later. And although Johnny's school attendance had improved, he was frequently late and was serving a suspension at the time of the hearing.

Bohy was asked if there were "any other services that you believe that we could attempt with Johnny . . . that he would be amenable to?" Bohy replied that the only services "left on the

table that Johnny has not been a part of would be in-home services through Boys Town or [multi-systemic therapy]," which Bohy described as "kind of the last effort to keep the youth in the community and in the home environment." But Bohy testified that he did not think these services would be effective for Johnny, and he could not think of any additional services that "would help Johnny to rehabilitate in the Juvenile Court."

In addition to his testimony, Bohy authored a supervision report that was received into evidence without objection. Bohy reported that at the time of the hearing, Johnny was out on bond in his criminal case and was placed back in the C.A.R.E. program. Bohy's report and a memorandum from an employee of the Juvenile Justice Center indicated Johnny had not progressed beyond the first level of the program because he was testing positive for THC and because empty alcohol bottles and "THC vapes" were found in his bedroom. Bohy's report and the memorandum stated that Johnny had been suspended from school twice in January 2025, receiving a 2-day suspension for a verbal altercation and a 5-day suspension for leaving school grounds without permission.

Johnny did not offer any exhibits at the hearing and did not call any witnesses.

### 2. Nonamenability Finding and Order

At the conclusion of the evidence, and after considering the parties' arguments, the court announced its findings from the bench and later memorialized those findings in written orders. Because Johnny challenges the accuracy of some of the court's oral remarks, we quote those remarks here before summarizing the court's written rulings.

After the court remarked on the felony charge of attempted robbery that had been filed in the county court, the following exchange occurred:

THE COURT: They're allegations. You're right, they're allegations, but [you're] charged with robbery in adult court, a felony. The second felony robbery. We've

adjudicated one [robbery] here. You got a burglary charge. Nearly each of your offenses includes crimes of violence. . . .

Johnny: Yes, sir.

. . . .

THE COURT: This Court is not equipped to respond to repeated violent behaviors by a 17 and a half year old.

Johnny: Yes, sir.

. . . .

THE COURT: . . . [Y]ou've been in Juvenile Court for over two years. We have exhausted lots of resources. I'm not convinced that any decision making class will have any impact on you. You have consistently demonstrated that you're going to do what you want to do. When you're on [C.A.R.E.] and at home, you're out and about on the streets whenever you want to. You continue to break the law. We had a detention hearing and a disposition on a motion to revoke your probation in mid November. Less than six weeks later you're allegedly involved in another felony crime involving violence.

So based on your age, being 17 and a half years old, based on your prior adjudications in this court, based on the services we've already used, and based on the totality of the circumstances, I'm going to find that you're non-amenable to services in the Juvenile Court. I'm going to terminate your probation, terminate this case unsuccessfully. Your record will not be sealed.

The court's oral ruling was memorialized in written orders entered January 31, 2025, in all five juvenile cases. Those written orders included the court's reasons for finding nonamenability and then ruled as follows:

IT [IS] THEREFORE ORDERED that [Johnny] is non-amenable to the rehabilitative services of the Nebraska Code pursuant to . . . §[ ]432,106.03 and the Court hereby terminates jurisdiction on the above-captioned matters as unsuccessful.

IT IS FURTHER ORDERED that [Johnny's] probation and the jurisdiction of the Court in this matter be and same is hereby terminated unsuccessfully.

IT IS FURTHER ORDERED that the responsibility of the probation officer in this matter be and the same is hereby terminated.

IT IS FURTHER ORDERED that the adjudication shall not be set aside and [Johnny's] record in this matter shall not be sealed at this time.

Johnny filed timely notices of appeal in all five juvenile cases, and the Nebraska Court of Appeals consolidated the appeals for briefing and disposition. We moved the consolidated appeals to our docket on our own motion to address several issues of first impression relating to the proper construction and application of § 43-2,106.03.

## II. ASSIGNMENTS OF ERROR

Johnny assigns, restated and consolidated, that the juvenile court erred in (1) finding he was not amenable to rehabilitative services under the Nebraska Juvenile Code and (2) terminating probation and jurisdiction based on that finding.

## III. STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.[1]

[2] Ordinarily, an appellate court reviews juvenile cases de novo on the record and reaches a conclusion independent of the juvenile court's findings.[2] Both parties suggest that is the standard appellate courts should apply when reviewing a finding of nonamenability under § 43-2,106.03.

But in some juvenile appeals, we have said the proper standard of review is "de novo on the record for an abuse of

---

[1] *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023).

[2] *In re Interest of Victor L.*, 309 Neb. 21, 958 N.W.2d 413 (2021). See *In re Interest of Jeovani H.*, 316 Neb. 723, 6 N.W.3d 539 (2024).

discretion."[3] We have applied that standard of review when the Legislature has granted the juvenile courts broad discretion to act or not to act,[4] such as decisions to transfer a juvenile delinquency case to the county court or district court[5]; determinations that a juvenile was denied the statutory right to a prompt adjudication[6]; determinations that a juvenile's waiver of counsel was voluntary, knowing, and intelligent[7]; and decisions about whether a juvenile petition should be dismissed because the juvenile lacks competency.[8]

[3] Because a juvenile court's determination of amenability under § 43-2,106.03 involves the sort of broad discretion that warrants appellate review de novo on the record for an abuse of discretion, we apply that standard of review in these consolidated appeals.

## IV. ANALYSIS

One of the many statutory factors a court must consider when determining whether to transfer a case involving a juvenile is "whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03."[9] Although Nebraska appellate opinions have often observed that no order pursuant to § 43-2,106.03 had been issued regarding the subject juvenile,[10] there are no published appellate opinions construing or applying the provisions of § 43-2,106.03. Because these

---

[3] *In re Interest of Victor L., supra* note 2, 309 Neb. at 27, 958 N.W.2d at 419.

[4] *In re Interest of J.K.*, 265 Neb. 253, 656 N.W.2d 253 (2003).

[5] See *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018).

[6] See *In re Interest of Shaquille H.*, 285 Neb. 512, 827 N.W.2d 501 (2013).

[7] See *In re Interest of Dalton S.*, 273 Neb. 504, 730 N.W.2d 816 (2007).

[8] See *In re Interest of Victor L., supra* note 2.

[9] See Neb. Rev. Stat. § 43-276(1)(m) (Cum. Supp. 2024).

[10] See, e.g., *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025); *Aldana Cardenas, supra* note 1; *In re Interest of Steven S., supra* note 5; *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

consolidated appeals present our first opportunity to consider such orders, we requested supplemental briefing on several issues, including: (1) what legal standard juvenile courts should apply to determine amenability under § 43-2,106.03; (2) who bears the burden of proof when a motion is made pursuant to § 43-2,106.03 and what quantum of proof is required to carry that burden; and (3) when an order is issued pursuant to § 43-2,106.03 finding that a juvenile is not amenable to rehabilitative services, is the juvenile court authorized to change the disposition based on such finding?

We have considered the parties' supplemental briefing on these issues of statutory construction, and we address their arguments later in the opinion. But first, we address our jurisdiction to review the orders from which Johnny has appealed.

## 1. Appellate Jurisdiction

[4] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[11] Here, both parties describe the orders of nonamenability as "final orders,"[12] but neither party explains why that is so, and we have not previously addressed the issue.

[5] Neb. Rev. Stat. § 43-2,106.01(1) (Reissue 2016) authorizes appeals from "[a]ny final order or judgment entered by a juvenile court . . . ." No one contends the orders at issue rendered a judgment,[13] and because we consistently describe proceedings before a juvenile court as special proceedings for appellate purposes,[14] the threshold jurisdictional

---

[11] *In re Interest of Jordon B.*, 316 Neb. 974, 7 N.W.3d 894 (2024).

[12] Brief for appellant at 5. See brief for appellee at 4.

[13] See Neb. Rev. Stat. § 25-1301(1) and (2) (Cum. Supp. 2024) (defining "judgment" as "the final determination of the rights of the parties in an action" and "[r]endition of a judgment" as court's act of signing "a single written document stating all of the relief granted or denied in an action").

[14] See, e.g., *In re Interest of Victor L., supra* note 2; *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017).

question is whether the juvenile court's orders of nonamenability were orders "affecting a substantial right made during a special proceeding" within the meaning of Neb. Rev. Stat. § 25-1902(1)(b) (Cum. Supp. 2024). The determination of appealability in this case, as in other juvenile cases, is a fact-intensive inquiry.[15]

[6-8] A "substantial right" is an essential legal right, not a mere technical right.[16] And we have said it is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[17] Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.[18]

Here, when determining if the orders affected a substantial right with finality, it is significant that those orders did more than just find that Johnny was not amenable to rehabilitative services under § 43-2,106.03. The orders also changed the disposition in each case by directing that "[Johnny's] probation and the jurisdiction of the Court in this matter be and same is hereby terminated unsuccessfully." Later in this opinion, we address whether a juvenile court has the authority to modify a dispositional order based solely on a finding of nonamenability. But for purposes of determining appellate jurisdiction, we conclude that because the orders at issue effectively changed the disposition in each juvenile case, they affected a substantial right and did so with the type of finality required to create a final, appealable order under § 25-1902(1)(b). We express no opinion on whether an order that contains only a finding of nonamenability under § 43-2,106.03, but does not modify the disposition, would be a final order.

Having confirmed that appellate jurisdiction exists on this record, we turn to the merits of Johnny's assignments of error.

---

[15] *In re Interest of Zachary B.*, 299 Neb. 187, 907 N.W.2d 311 (2018).

[16] *In re Interest of Becka P. et al.*, 296 Neb. 365, 894 N.W.2d 247 (2017).

[17] *Noland v. Yost*, 315 Neb. 568, 998 N.W.2d 57 (2023).

[18] *Id*.

He challenges both the juvenile court's finding of nonamenability under § 43-2,106.03 and its reliance on that finding to terminate his probation and terminate the court's jurisdiction. To analyze these assignments, we must first construe the relevant provisions of § 43-2,106.03.

## 2. Construing § 43-2,106.03

[9] When construing a statute, a court's analysis always begins with the text; statutory language is given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[19]

[10-12] Courts must also determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[20] It is the court's duty to discover, if possible, legislative intent from the statute itself.[21] A court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves its purpose.[22]

[13] In addition to these settled general principles of statutory interpretation, there are certain principles that apply when a court is construing statutes under the Nebraska Juvenile Code.[23] The Legislature has directed that statutes within the juvenile code should be construed to effectuate certain goals, including, "[t]o remove juveniles who are within the Nebraska Juvenile Code from the criminal justice system whenever possible and to reduce the possibility of their committing future

---

[19] See *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022).

[20] See *In re Interest of Victor L., supra* note 2.

[21] *McCoy v. Albin*, 298 Neb. 297, 903 N.W.2d 902 (2017).

[22] See *id.*

[23] See, Neb. Rev. Stat. § 43-246 (Cum. Supp. 2024); Neb. Rev. Stat. § 43-2,128 (Reissue 2016).

law violations through the provision of social and rehabilitative services to such juveniles and their families."[24] Because the foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, we have recognized that statutes under the juvenile code must be liberally construed to serve the best interests of the juveniles who fall within it.[25]

With these principles in mind, we turn to the provisions of § 43-2,106.03 and recite them in full for the convenience of the reader:

> Any time after the disposition of a juvenile described in subdivision (1), (2), (3)(b), or (4) of section 43-247, upon the motion of any party or the court on its own motion, a hearing may be held regarding the amenability of the juvenile to the rehabilitative services that can be provided under the Nebraska Juvenile Code. The court may enter an order, based upon evidence presented at the hearing, finding that a juvenile is not amenable to rehabilitative services that can be provided under the Nebraska Juvenile Code. The reasons for such a finding shall be stated in the order. Such an order shall be considered by the county attorney in making a future determination under section 43-276 regarding such juvenile and by the court when considering a future transfer motion under section 29-1816 or 43-274 or any future charge or petition regarding such juvenile.

Johnny does not challenge the State's ability to request an amenability hearing under § 43-2,106.03, since he is a juvenile as described in subdivisions (1), (2), and (3)(b) of § 43-247 and the motions at issue were filed after dispositional orders had been entered in his juvenile cases. But he contends it was error for the juvenile court to find him nonamenable and to terminate probation and jurisdiction based on such finding.

---

[24] § 43-246(3).

[25] See *In re Interest of Jeovani H., supra* note 2.

The State disagrees; it contends that the finding of nonamenability was supported by the evidence, and it argues that the unsuccessful termination of probation and jurisdiction was "the logical result"[26] of such findings.

In arguing their respective positions, the parties disagree regarding the proper meaning, scope, and application of § 43-2,106.03. They urge different interpretations of the term "amenability" as used in § 43-2,106.03 and disagree on the meaning of the phrase "not amenable to rehabilitative services." And although they agree that the State had the burden to prove nonamenability on this record, they disagree as to the quantum of proof required to carry that burden. Finally, the parties' reasoning differs on whether a finding of nonamenability under § 43-2,106.03 can support a change in disposition. We address each of these legal questions in our analysis.

### (a) Meaning of Amenability to Rehabilitative Services

The Nebraska Legislature has not defined the term "amenability" for purposes of § 43-2,106.03, nor has it identified any factors to be considered when determining whether a juvenile is "not amenable to rehabilitative services" under that statute.[27] At oral argument before this court, both parties referred to dictionary definitions of "amenable," and we have observed

---

[26] Supplemental brief for appellee at 10.

[27] Cf. 42 Pa. Stat. and Cons. Stat. Ann. § 6355(a)(4)(iii) (West 2013) (listing nine factors to consider when determining whether child is "amenable to treatment, supervision or rehabilitation as a juvenile"). See, also, *State v. J.D.S.*, 723 P.2d 1278, 1279 (Alaska 1986) (noting Alaska statute defined phrase "'not amenable to treatment'" to mean minor "'probably cannot be rehabilitated by treatment under this chapter before reaching 20 years of age'" and holding that when making such determination, courts may consider "'the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor'").

that courts often turn to dictionaries to ascertain a word's plain and ordinary meaning.[28]

Section 43-2,106.03 was enacted in 2008.[29] At that time, Black's Law Dictionary defined the term "amenable" to mean "[l]egally answerable; liable to being brought to judgment."[30] The Oxford English Dictionary defined "amenable" as "[d]isposed to answer, respond, or submit (to influence); responsive, tractable; capable of being won over."[31] And the Webster's II New College Dictionary defined "amenable" as "[w]illing to follow advice or suggestion," "[o]bedient," "tractable," and "[r]esponsible to authority."[32]

Although current dictionary definitions of "amenable" include more detail, the meaning of the term has not substantively changed. Black's Law Dictionary currently defines "amenable" as "[a]cknowledging authority[,] ready and willing to submit," or "[s]uitable for a particular type of treatment."[33] And The Oxford English Dictionary currently defines "amenable" as "[i]nclined to be influenced or controlled."[34] Finally, Merriam-Webster dictionary currently defines "amenable" to mean "having or showing willingness to agree or to accept something that is wanted or asked for" or "readily yielding, submitting, or cooperating," and it cites the example of a defendant's being "*amenable* to rehabilitation."[35]

---

[28] See, e.g., *State v. Bryant*, 311 Neb. 206, 971 N.W.2d 146 (2022); *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016) (and cases cited therein).

[29] See Introduced Copy, L.B. 1160, Judiciary Committee, 100th Leg., 2d Sess. (Jan. 23, 2008) (amended into 2008 Neb. Laws, L.B. 1014).

[30] Black's Law Dictionary 89 (8th ed. 2004).

[31] 1 The Oxford English Dictionary 394 (2d ed. 1989) (emphasis omitted).

[32] Webster's II New College Dictionary 36 (3d ed. 2005).

[33] Black's Law Dictionary 101 (12th ed. 2024).

[34] "Amenable," Oxford English Dictionary Online, https://www.oed.com/search/dictionary/?scope=Entries&q=amenable (last visited Jan. 8, 2026).

[35] "Amenable," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/amenable (last visited Jan. 8, 2026) (emphasis in original).

[14,15] Because courts construing a statute must also determine and give effect to the purpose and intent of the Legislature, and because "the primary source of insight into the intent of the Legislature is the language of the statute,"[36] we also look to the plain language of § 43-2,106.03 to discern its purpose. Section 43-2,106.03 mandates how, when, and by whom any orders finding nonamenability must be considered, and it directs that county attorneys shall consider such orders "in making a *future* determination under section 43-276 regarding such juvenile" and that courts shall consider such orders "when considering a *future* transfer motion under section 29-1816 or 43-274 or any *future* charge or petition regarding such juvenile." (Emphasis supplied.) We discern from this language that the primary purpose of § 43-2,106.03 is to provide prosecutors and courts with predictive information to consider when making future filing, charging, and transfer decisions involving the juvenile.[37] The legislative history, while not dispositive,[38] also supports this purpose.[39]

[16] Considering the common definitions of the term "amenable" and the Legislature's purpose for enacting § 43-2,106.03, we hold the plain and ordinary meaning of the term "amenability" as used in § 43-2,106.03 refers to the likelihood that

---

[36] See *Arthur v. Microsoft Corp.*, 267 Neb. 586, 593-94, 676 N.W.2d 29, 35 (2004) (internal quotation marks omitted).

[37] See § 43-276(1)(a) and (m).

[38] See *Salem Grain Co. v. City of Falls City*, 302 Neb. 548, 564, 924 N.W.2d 678, 692 (2019) (noting that when construing statutes, courts need look no further than plain text but may inquire into legislative history either "when a statute is open to construction because its terms require interpretation or may reasonably be considered ambiguous").

[39] See Judiciary Committee Hearing, L.B. 1160, 100th Leg., 2d Sess. 24 (Feb. 14, 2008) (proponent of bill stating amenability provisions were intended to help criminal courts in counties with separate juvenile courts "ascertain the real benefit of transferring a case from adult court back to juvenile court" and better understand whether juvenile court "has basically exhausted all the available resources at its disposal to try to support the rehabilitation of that juvenile").

a particular juvenile will respond effectively in the future to the type of rehabilitative services that can be provided under the juvenile code. Relatedly, "a juvenile [who] is not amenable to rehabilitative services"[40] refers to a juvenile who, based on the evidence presented, is unlikely to respond effectively in the future to the rehabilitative services that can be provided under the juvenile code.

In addition to briefing the meaning of "amenability" under § 43-2,106.03, the parties have proposed specific factors they think juvenile courts should, and should not, consider when ruling on such motions. The Legislature sometimes identifies factors that juvenile courts should consider when making certain determinations,[41] but it has not prescribed any specific factors to be considered when determining amenability under § 43-2,106.03, and we find it unnecessary to judicially limit the court's analysis to a specific list of factors. A finding of nonamenability is necessarily fact specific, and because § 43-2,106.03 requires the juvenile court to state the reasons for any such finding in its order, the specific factors relied upon by the court in each case will be apparent from the order itself and available for review by all who are required to consider the order, including any appellate court.

### (b) Burden and Quantum of Proof

Section 43-2,106.03 authorizes "any party" or "the court on its own motion" to move for an evidentiary hearing "regarding the amenability of the juvenile to the rehabilitative services that can be provided" under the juvenile code. But the statute is silent regarding who bears the burden of proof at such a

---

[40] § 43-2,106.03.

[41] See, e.g., § 43-276 (setting out factors to be considered when making juvenile transfer decisions); Neb. Rev. Stat. § 43-286.02 (Supp. 2025) (setting out factors court should consider when deciding whether juvenile "is unlikely to respond effectively to graduated response sanctions" and thus should be designated as "comprehensive supervision probationer").

hearing, and it does not address the degree of proof required to carry that burden.

[17] In these consolidated appeals, the parties contend that because the State was the party that filed the motions seeking a finding of nonamenability, it was the State's burden to prove the same. We agree and hold that when the State files a motion under § 43-2,106.03 requesting a finding that a juvenile is not amenable to rehabilitative services, the State bears the burden of proving nonamenability. We leave for another day consideration of which party bears the burden of proof when either the court or the juvenile requests a hearing on amenability, as that issue is not before us.

The parties also disagree on the quantum of proof required at an amenability hearing under § 43-2,106.03. Johnny argues that a juvenile's amenability should be established by clear and convincing evidence, reasoning that proof beyond a reasonable doubt is "too high of a hurdle"[42] and a preponderance of the evidence standard is "too low."[43] The State argues that a juvenile's amenability under § 43-2,106.03 should be established by the same "preponderance standard used in other civil-type juvenile proceedings."[44]

[18,19] Although § 43-2,106.03 does not expressly identify the quantum of proof required in a postdispositional hearing to determine a juvenile's amenability to rehabilitative services, guidance can be found in other provisions of the juvenile code addressing similar hearings. For instance, Neb. Rev. Stat. § 43-286(1) (Cum. Supp. 2024) governs postdispositional hearings to determine whether a juvenile "has exhausted all levels of probation supervision and options for community-based services" and should be placed at a youth rehabilitation and treatment center, and it states "the burden is upon the [S]tate by a preponderance of the evidence" at

---

[42] Supplemental brief for appellant at 11.

[43] *Id*.

[44] Supplemental brief for appellee at 9.

such a hearing. Absent statutory language requiring a different standard of proof, Nebraska courts in civil cases generally apply the preponderance standard.[45] We therefore hold that in hearings pursuant to § 43-2,106.03, which are civil in nature, a juvenile's amenability to rehabilitative services must be established by a preponderance of the evidence, which is equivalent to the greater weight of the evidence.[46] The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true.[47]

### 3. ARGUMENTS ON APPEAL

Having construed the plain meaning of the relevant statutory language in § 43-2,106.03 and identified the applicable burden and quantum of proof, we turn now to the assignments of error on appeal. Johnny assigns error to the juvenile court's nonamenability determination and to its decision to terminate probation and jurisdiction "unsuccessfully" based on the nonamenability determination.

[20,21] As stated, we will review the juvenile court's nonamenability decision de novo on the record to determine if there has been an abuse of discretion.[48] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[49] And when reviewing a juvenile court's decision de novo on the

---

[45] See, e.g., *In re Application No. OP-0003*, 303 Neb. 872, 906-07, 932 N.W.2d 653, 678 (2019) (noting general rule that when act "does not specify a standard of proof, unless an exception applies, only a preponderance of evidence is required in civil cases"). Accord *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

[46] See *In re Interest of T.W.*, 314 Neb. 475, 991 N.W.2d 280 (2023) (recognizing that preponderance of evidence and greater weight of evidence are same standard).

[47] *Id*.

[48] See *In re Interest of Victor L., supra* note 2.

[49] *Id*.

record for an abuse of discretion, if the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over the other.[50]

(a) No Abuse of Discretion in
Nonamenability Determination

Johnny argues the juvenile court erred in finding him nonamenable, but he does not challenge the sufficiency of the evidence as it regards the type of rehabilitative services that can be provided in the juvenile court. Instead, he argues the evidence showed that he either "completed, or was in the process of completing, every rehabilitative service and condition ordered by the [juvenile] court as part of his probation,"[51] and he suggests this shows that he "would have been amenable to completing"[52] additional "in-home services"[53] in the future. Johnny argues that the juvenile court's emphasis on evidence of his continued criminal conduct and new law violations while on probation was improper for two reasons. First, he argues the juvenile court "inaccurately"[54] described some of his adjudicated and charged offenses and mischaracterized some of his behavior as "violent"[55] when it was merely "'aggressive.'"[56] Alternatively, he argues that his criminal conduct while on probation was "irrelevant"[57] to an amenability determination under § 43-2,106.03.

The State disagrees. It argues that the purpose of the amenability hearing was to evaluate "whether the rehabilitative

---

[50] See *In re Interest of Steven S., supra* note 5.

[51] Brief for appellant at 11.

[52] *Id*. 15.

[53] *Id*.

[54] *Id*. at 16.

[55] *Id*. at 18.

[56] *Id*.

[57] *Id*. at 17.

services available under the Juvenile Code had any reasonable chance of success"[58] with Johnny. According to the State, "[h]ow a juvenile has progressed or failed while being offered juvenile services is the best evidence and indicator in determining whether they'll be amenable to additional or alternative services"[59] in the juvenile court in the future. The State argues that the evidence adduced at the hearing established that despite being provided rehabilitative services, Johnny "was not making progress towards meaningful rehabilitation and was continuing to commit further crimes"[60] and that therefore, the juvenile court did not err in its nonamenability determination under § 43-2,106.03.

Our de novo review makes it unnecessary to address any of Johnny's arguments that are focused on alleged misstatements or mischaracterizations of the record by the juvenile court. Instead, having reviewed the record de novo, we focus on whether the juvenile court's nonamenability determination was based on reasons that are untenable or unreasonable or was clearly against justice or conscience, reason, and evidence.[61]

In its written orders, the juvenile court stated several reasons for finding that Johnny is not amenable to the rehabilitative services that can be provided in the juvenile court, including the following:

• Johnny's "adjudicated offenses included acts of violence."
• The juvenile court had been providing resources and services "for more than two years in an attempt to rehabilitate the juvenile."
• While on probation, Johnny had numerous periods of detention, and he "continues to violate court orders, the conditions of his probation, and has had his juvenile probation revoked in the past."

---

[58] Brief for appellee at 12.

[59] *Id*. at 13.

[60] *Id*. at 14.

[61] See *In re Interest of Victor L., supra* note 2.

• While on probation, Johnny was "placed out of home, but lost that placement due to violent and aggressive behaviors." Additional out-of-home placement options were denied due to Johnny's behavior, and the juvenile court "currently lacks any possible out-of-home placement options" for Johnny.

• Despite "extensive efforts to rehabilitate [Johnny]," he "continues to engage in criminal activity to include violent and felony level offenses," and he "has a new felony Robbery case in adult court involving allegations of violence that occurred on December 31, 2024."

• Johnny "has a pro-criminal ideation and negative attitude towards individuals of authority," and "the public safety of the community and the safety of [Johnny] requires intervention and services not available to the juvenile court."

• At the time of the hearing, Johnny was "17 and a-half years old and will be turning 18 in August, 2025."

These reasons are supported by a preponderance of the evidence, and they are sufficiently probative of an amenability determination under § 43-2,106.03, which is focused on the likelihood that the juvenile will respond effectively in the future to the type of rehabilitative services available in the juvenile court. On this record, we cannot say the juvenile court's determination of nonamenability was based on reasons that were untenable or unreasonable, nor can we say its determination of nonamenability was clearly against justice, conscience, reason, or evidence.

Because our de novo review shows no abuse of discretion in the juvenile court's nonamenability determination under § 43-2,106.03, we reject Johnny's first assignment of error. But that does not end our analysis, because the juvenile court relied on the nonamenability finding to modify the disposition in each of Johnny's pending juvenile cases. We turn to that issue next and ultimately conclude the juvenile court plainly erred in changing the dispositional orders based solely on a finding of nonamenability under § 43-2,106.03.

(b) Plain Error in Changing Dispositions

[22-24] Before addressing the dispositional changes, we recall several foundational principles that govern our analysis. Pursuant to Neb. Const. art. V, § 27, the juvenile court is a statutorily created tribunal established by the Legislature "with such . . . powers as the Legislature may provide." As a statutorily created court of limited jurisdiction, a juvenile court has only the authority conferred upon it by statute.[62] Consequently, when considering whether a juvenile court acted within its authority, an appellate court will look to the authority conferred by statute.[63] With these principles in mind, we consider whether the juvenile court's finding of nonamenability under § 43-2,106.03 authorized it to modify the dispositions by terminating probation and jurisdiction.

Where, as here, a juvenile has been adjudicated under § 43-247(1), (2), or 3(b), the dispositional options available to the juvenile court are set out in § 43-286(1)(a) and (3).[64] And once a dispositional order has been entered, the juvenile court's authority to modify that disposition is limited by § 43-286(6), which provides:

(6)(a) Except as provided in subdivision (6)(b) of this section, the court shall not change a disposition unless the court finds that the juvenile has violated a term or condition of probation or supervision or an order of the court and the procedures in subdivision (5)(b) of this section have been satisfied.

(b) Upon motion of the juvenile, the court may modify the terms or conditions of probation or supervision or modify a dispositional order if:

---

[62] See, *In re Interest of Jordon B.*, 312 Neb. 827, 981 N.W.2d 242 (2022); *In re Interest of Kamille C. & Kamiya C.*, 302 Neb. 226, 922 N.W.2d 739 (2019); *In re Interest of Josue G.*, 299 Neb. 784, 910 N.W.2d 159 (2018).

[63] See *In re Interest of Josue G., supra* note 62.

[64] See § 43-246(1), (2), and (3).

(i) All parties stipulate to the particular modification; and

(ii) The juvenile has consulted with counsel or has waived counsel. Any waiver must be particular to the modification and shall comply with section 43-3102.

Additionally, Neb. Rev. Stat. § 43-286.01 (Supp. 2025) provides, in relevant part:

(8) During the term of probation, the court, on application of a probation officer or of the juvenile or on its own motion, may reduce or eliminate any of the conditions imposed on the juvenile. Upon completion of the term of probation or the earlier discharge of the juvenile, the juvenile shall be relieved of any obligations imposed by the order of the court and his or her record shall be sealed pursuant to section 43-2,108.04.

[25] Nebraska appellate courts have repeatedly emphasized the importance of complying with the applicable statutory procedures when modifying a dispositional order, and our case law is clear that once a juvenile court enters a dispositional order of probation, it is not authorized to change the terms or conditions of probation unless the applicable statutory procedures are followed.[65]

In *In re Interest of Josue G.*,[66] the State moved to revoke a juvenile's probation based on allegations of a new law violation but later withdrew the motion before it was heard. The juvenile court nevertheless modified the disposition to extend the term of probation, and the juvenile appealed. We held that "once a court has entered a disposition, it is plain error to change that disposition in the absence of compliance with the applicable statutory procedures."[67] We therefore vacated

---

[65] See, e.g., *In re Interest of Josue G., supra* note 62; *In re Interest of Nowa K.*, 33 Neb. App. 446, 16 N.W.3d 896 (2025); *In re Interest of Iyana P.*, 25 Neb. App. 439, 907 N.W.2d 333 (2018).

[66] *In re Interest of Josue G., supra* note 62.

[67] *Id*. at 790, 910 N.W.2d at 163.

the juvenile court's order for plain error, finding the juvenile court had exceeded its statutory authority by extending the term of probation without complying with the applicable statutory procedures.

The Court of Appeals reached a similar conclusion in *In re Interest of Iyana P.*[68] There, the juvenile had been adjudicated under § 43-247(1) (Reissue 2016) and placed on a 6-month term of probation. Although no motion to revoke probation had been filed by the State, the juvenile court entered an order changing the juvenile's placement and extending the term of probation to "'an open ended period of time.'"[69] The juvenile moved to vacate the modified probation order, arguing the court lacked authority to change the disposition without following the provisions of § 43-286 (Reissue 2016). The court overruled the motion to vacate, and the juvenile appealed. The Court of Appeals noted our settled precedent, holding that "once a [juvenile] court has entered a disposition, it is plain error to change that disposition when the State has not complied with the applicable statutory procedures."[70] Finding that the juvenile court lacked the authority to modify the terms and conditions of probation without following the statutory procedures in § 43-286, the Court of Appeals reversed the order denying the motion to vacate and remanded the matter with directions to vacate the modified probation order.

Similar reasoning was applied in the recent case of *In re Interest of Nowa K.*[71] There, the juvenile was adjudicated in three separate cases and was placed on an "open-ended term of probation."[72] Thereafter, the juvenile was charged in criminal court with robbery and theft. The State did not move to revoke

---

[68] *In re Interest of Iyana P., supra* note 65.

[69] *Id.* at 442, 907 N.W.2d at 336.

[70] *Id*. at 444, 907 N.W.2d at 337.

[71] *In re Interest of Nowa K., supra* note 65.

[72] *Id*. at 447, 16 N.W.3d at 898.

the juvenile's probation, and instead, it made an oral motion asking the juvenile court to terminate jurisdiction in all three juvenile cases, arguing there was no need to "'keep coming into juvenile court when [the juvenile] is now in . . . adult [court] facing some pretty significant sentence[s].'"[73] Over the juvenile's objection, the juvenile court entered an order in all three cases "terminating [the juvenile's] probation as unsatisfactorily completed, ordering that his record remain unsealed at that time, and terminating the jurisdiction of the juvenile court."[74] The juvenile appealed, challenging the juvenile court's authority to change the dispositions without a motion to revoke probation under § 43-286 (Cum. Supp. 2024). The Court of Appeals reviewed the statutes giving juvenile courts authority to change a disposition and concluded the procedures either had not been followed or did not apply. It therefore reversed and remanded with directions to vacate the orders terminating probation and jurisdiction.

Here, the juvenile court relied exclusively on its nonamenability finding under § 43-2,106.03 as the authority to modify the dispositional orders in each case by terminating probation, and the court's jurisdiction, "unsuccessfully." But we see no language in § 43-2,106.03, or in any other statute in the juvenile code, that authorizes a juvenile court to modify a disposition based solely on a finding of nonamenability.

[26] At oral argument before this court, the parties acknowledged there is no express statutory authority in the juvenile code for a juvenile court to terminate probation or jurisdiction based solely on a finding of nonamenability under § 43-2,106.03. But in its supplemental briefing, the State urges us to infer such authority, arguing:

> [T]he logical result of . . . a finding of non-amenability under § 43-2,106.03 is that the basis for the court's dispositional authority, namely the potential for rehabilitation,

---

[73] *Id*. at 448, 16 N.W.3d at 898.

[74] *Id*. at 448, 16 N.W.3d at 899.

has been extinguished. Once the court determines that the juvenile is non-amenable, the court not only establishes a record for future proceedings but also provides the functional equivalent of a revocation of the existing probation. The finding confirms that the juvenile has exhausted the relief available under the Nebraska Juvenile Code, necessitating the termination of jurisdiction . . . .[75]

[27] It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.[76] We therefore decline the State's invitation to read into § 43-2,106.03 a provision that would authorize juvenile courts to change a disposition based solely on a finding of nonamenability.

In § 43-286(6), the Legislature has expressly prohibited juvenile courts from changing a disposition unless either the court finds the juvenile has violated a term or condition of probation or an order of the court and the procedures in § 43-286(5)(b) have been satisfied, or the juvenile has filed a motion to modify under § 43-286(6)(b) and all parties stipulate to the particular modification. Neither procedure was followed in this case. And although the Legislature, in § 43-286.01(8), has expressly authorized juvenile courts to "reduce or eliminate" a condition of probation upon the application of either the juvenile, the probation officer, or the court, no such application appears in the appellate record.

Because the record in these consolidated appeals does not reflect that the juvenile court had any statutory authority to modify the dispositions, all such modifications must be vacated for plain error[77] and the matters remanded to the juvenile court.

---

[75] Supplemental brief for appellee at 10.

[76] *State v. Perry*, 318 Neb. 613, 17 N.W.3d 504 (2025).

[77] See, *In re Interest of Josue G., supra* note 62; *In re Interest of Nowa K., supra* note 65; *In re Interest of Iyana P., supra* note 65.

## V. CONCLUSION

Upon our de novo review of the record, we find no abuse of discretion in the juvenile court's determination under § 43-2,106.03 that Johnny is not amenable to the rehabilitative services that can be provided under the juvenile code. But we find the juvenile court plainly erred in terminating probation and jurisdiction based on that determination, because the Legislature has not given juvenile courts authority to modify dispositional orders based solely on a finding of nonamenability under § 43-2,106.03. We therefore affirm that portion of the juvenile court's orders finding nonamenability, and we vacate the remainder of the orders and remand the causes to the juvenile court for further proceedings.

Affirmed in part, and in part vacated and
remanded for further proceedings.